Bailey Lishian CHEN, Appellant,

v.

The STATE of Texas.

No. 656–00.

Court of Criminal Appeals of Texas.

April 11, 2001.

Richard Alan Anderson, Dallas, for appellant.

Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for the State.

## *OPINION*

HOLLAND, J., delivered the opinion of the unanimous Court.

Appellant was convicted in a bench trial of attempted sexual performance by a child, and he was sentenced to seven years confinement and a fine of $1000. *See* Tex. Pen.Code Ann. §§ 15.01, 43.25(b). Imposition of the seven years confinement was suspended, and appellant was placed on seven years community supervision. The court of appeals affirmed the conviction. *See Chen v. State,* No. 05–98–00632, slip op. at 5, 2000 WL 124680 (Tex.App.—Dallas, Feb.3, 2000) (not designated for publication). We granted appellant's petition for discretionary review to determine "[w]hether a 47 year old male undercover officer posing as a 13 year old female for the purposes of internet communications established evidence that was sufficient, as a matter of law, to support a conviction for the offense of attempted sexual performance by a child." We will affirm the judgment of the court of appeals.

The evidence presented at appellant's bench trial showed that on December 13, 1996, appellant placed an advertisement on an America Online computer bulletin board stating, "A nude dancer needed for discreet pleasure. I am generous and rich. You must be very attractive and young." Detective Steve Nelson, a Dallas Police Officer working on a specialized crime task involving child exploitation, discovered the advertisement. On December 16, 2001, he e-mailed appellant back representing himself as J. Cirello and asking appellant "how young of a nude dancer [he was] looking for." Appellant replied, "I

will say between 20 and 30 or as long as you have a young looking face and tender body." Detective Nelson responded that there was no one in that age range and signed the email "J. Cirello."

Appellant e-mailed again and asked, "What age are you in?" Posing as J. Cirello, Detective Nelson wrote, "If you don't care about age I am 13, looking for independence. What are you looking for?" Appellant replied that he was looking for a girl who "dares to be nude and watched by me while I am masturbating." He asked to "get together" and requested her name and location. Detective Nelson e-mailed, stating "My name is Julie." He also wrote that "Julie" had never seen a man masturbate and did not want "her" parents to find out.

During the next few e-mails, appellant asked where Julie lived and when they could get together. He expressed a desire to exchange telephone numbers. He stated that they could get to know each other first and assured Julie that he would not hurt her. "Julie" asked for his description and his phone number and stated that "it might be better if [she] calls [appellant]." "Julie" wrote that "she" had never had sex before and was a little scared. Appellant responded that "sex [a] is wonderful thing." He also later wrote that "sex is not my major object." "Julie" then expressed that "she" was possibly interested in sex "if the right person came along to explain things and help [her]." For a few more weeks, Appellant and "Julie" e-mailed each other, discussing appellant's sexual history, "Julie's" nervousness, and plans to meet in person. Appellant described his van as champagne colored.

On February 6, 1997, appellant and "Julie" began their plan to meet. Appellant assured "Julie" that he would bring pro-

tection and lubrication, so that he would not hurt her or get her pregnant. After a series of e-mails, they decided to meet at a Best Western on a Tuesday afternoon (February 11, 1997). Appellant informed Julie that he had a room reserved for that day. "Julie" wrote appellant, stating that she would be outside the lobby between 3:30 and 4:00 pm and described herself as "5–foot one inch tall with long blond hair."

The Garland Police Department set up surveillance at the Best Western. Appellant arrived at the motel in a champagne colored minivan. He initially sat in the minivan for about ten minutes. Eventually, he went in the lobby, stayed for two minutes, then came back out to his vehicle. When he got back into his minivan, the police arrested him. Appellant had a package of condoms and a tube of KY Jelly on the console of his minivan. He later gave a voluntary statement in which he admitted that he was going to show a girl how to have sex.

Detective Nelson admitted on cross-examination that he was a white male and had never been known by the name of Julie Cirello. "Julie" did not exist, and he was the author of the e-mails signed by "Julie." Appellant asked the trial court to render a verdict of "not guilty" because the State failed to prove the elements contained in the indictment. Specifically, appellant argued that the State failed to prove he attempted to induce the named complainant, Julie Cirello, to commit any acts alleged in the indictment. Additionally, he asserted that the State failed to prove that Julie Cirello was a person under the age of 18 and that the proof presented at trial was a fatal variance with the allegation in the indictment. The trial court found appellant guilty beyond a reasonable doubt as charged in the indictment.

On appeal, appellant argued that because Julie Cirello did not exist, it was impossible for the State to prove a "completed" offense. The court of appeals rejected appellant's argument, stating that "[t]he State did ... prove appellant *attempted* to induce a person, whom he knew as Julie Cirello, a thirteen-year-old child, to have sexual intercourse with him." *Chen,* slip op. at 4. There was not a variance between the allegations in the indictment and the proof at trial. *See id.* This Court granted appellant's petition for discretionary review.

In his brief, appellant argues that the court of appeals erred by equating the intent element of the criminal intent statute (Texas Penal Code section 15.01) with the specific intent requirement of the underlying offense (Texas Penal Code section 43.25). Appellant asserts that the crucial issue in this case is that it is "legally impossible" to commit the underlying offense. Therefore, the evidence in the record is insufficient as a matter of law to support the verdict.

In response, the State argues that this Court should reject the doctrine of legal impossibility as a defense. It states that the defense is not in the Penal Code and has been questioned by members of this Court in the past. Alternatively, the State asks this Court to hold that the impossibility doctrine does not apply to attempt crimes. Even if legal impossibility is a valid defense, the State asserts that appellant's circumstances present a factual impossibility claim, which is not a recognized defense.

The relevant portion of Texas Penal Code section 43.25(b) states, "A person commits an offense if, knowing the character and content thereof, he employs, authorizes, or induces a child younger than 18 years of age to engage in sexual conduct or a sexual performance." TEX. PEN.

CODE ANN. § 43.25(b). "A person commits an offense, if with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PEN.CODE ANN. § 15.01. Therefore, the offense of attempted sexual performance by a child is committed if: 1) the defendant; 2) with specific intent to commit sexual performance by a child; 3) does an act amounting to more than mere preparation; 4) that tends but fails to effect the commission of sexual performance by a child. *See Yalch v. State*, 743 S.W.2d 231, 233 (Tex.Crim.App.1988) (discussing the required elements for criminal attempt).

This Court discussed the doctrine of legal impossibility and factual impossibility at length in *Lawhorn v. State*, 898 S.W.2d 886 (Tex.Crim.App.1995). At that time, we stated that legal impossibility was a valid defense, while factual impossibility was not. *See id.* at 891. In his dissent, Judge Meyers asserted that neither legal nor factual impossibility should be a valid defense to a crime because neither defense is listed in the Texas Penal Code and older common law cases discussing legal impossibility should not survive the enactment of the Texas Penal Code. *See id.* at 894–95 (Meyers, J., dissenting). We find it unnecessary to dispose of the legal impossibility doctrine at this time. While we acknowledge that the line between legal and factual impossibility is sometimes difficult to draw, appellant's case does not involve a legal impossibility scenario. Rather, it presents factual impossibility.

■■■ "The distinction between factual and legal impossibility has been characterized as turning on whether the goal of the actor was deemed by the law to be a crime." 21 AM.JUR.2D *Criminal Law* § 178 (1999). Legal impossibility exists "where the act if completed would not be a crime, although what the actor intends to accomplish would be a crime." *Lawhorn*, 898 S.W.2d at 891. It has also been described as "existing [when] what the actor intends to do would not constitute a crime, or at least the crime charged." *Id.* On the other hand, factual impossibility exists when "due to a physical or factual condition unknown to the actor, the attempted crime could not be completed." *Id.* In other words, factual impossibility "refers to a situation in which the actor's objective was forbidden by the criminal law, although the actor was prevented from reaching that objective due to circumstances unknown to him." 21 AM.JUR.2D *Criminal Law* § 178.

■ This Court has very few cases raising the issues of factual or legal impossibility—especially in the context of attempt crimes.[1] The concept of factual impossibility is well-illustrated in *People v. Grant*, 105 Cal.App.2d 347, 233 P.2d 660 (1951).

1. In *Flanagan v. State*, 675 S.W.2d 734 (Tex. Crim.App.1982) (opinion on rehearing), the majority rejected the defendant's argument that the evidence was insufficient to show defendant intended to murder the complainant, although his effort to do so failed. *Id.* at 745. The dissent argued that the type of shot fired from the shotgun was incapable of causing death or serious bodily injury. *See id.* at 748 (Teague, J., dissenting). Without a reasonable probability that the murder could have occurred, the dissent concluded that it was factually impossible to commit the offense of attempted murder and the defendant was not guilty. *See id.* In reaching this conclusion, the dissent stated that "[i]t has long been the law of this State that factual impossibility inherent in the means used has always been an affirmative defense to a charge of assault with intent to murder." *Id.* at 749 (Teague, J., dissenting) (citing *Scott v. State*, 46 Tex.Crim. 315, 81 S.W. 952 (Tex.Crim. App.1904)). Although the majority implicitly overruled the dissent's argument in that case, *Lawhorn* specifically stated that factual impossibility is not a defense in the context of attempt crimes. *See Lawhorn*, 898 S.W.2d at 891.

In *Grant,* the defendant placed a home-made bomb in his suitcase for a family trip to San Diego. The defendant apparently intended for his family to be on the plane when it exploded, leaving him to collect the insurance money on their lives. The bomb discharged before the plane had been filled with people, but it was extinguished before it harmed anyone. At trial, evidence was admitted that showed if the bomb had worked properly, the plane would have crashed into the ocean. *See id.* at 662–64. In discussing the factual impossibility of the crime, the court noted that the defendant intended to cause the destruction of his family's airplane. *See id.* at 667. Even though the bomb exploded early, the defendant was still guilty of attempted murder. *See id.* "[W]here a defendant is charged with an attempt to commit a crime it is immaterial whether the attempted crime is impossible of completion if, as in the present case, completion was apparently possible to the defendant who was acting with the intent to commit the crime of murder." *Id. Cf. Bell v. State of Nevada,* 105 Nev. 352, 775 P.2d 1273, 1274 (1989) (focusing on the specific intent to commit the substantive offense); *State of New Mexico v. Lopez,* 100 N.M. 291, 669 P.2d 1086, 1087 (1983) (stating that a defendant "should be treated in accordance with the facts as he believe[d] them to be."); *State of North Carolina v. Hageman,* 307 N.C. 1, 296 S.E.2d 433, 441 (1982) (holding that "when a defendant has the specific intent to commit a crime and under the circumstances as he reasonably saw them did the acts necessary to consummate the substantive offense, but, because of facts unknown to him essential elements of the substantive offense were lacking, he may be convicted of an attempt to commit the crime.")[2]

■ In applying these concepts to the instant case, we initially note that if Julie Cirello had been an actual thirteen year old, then what appellant intended to accomplish (sexual performance by a child) constituted an actual crime. Appellant's goal was to commit the offense of sexual performance by a child. Because that goal is a crime by law, the doctrine of legal impossibility is not at issue in this case. Rather, this case presents a factual impossibility scenario. Due to a factual condition unknown to appellant (that Julie Cirello did not actually exist), the offense of sexual performance by a child could not be completed. It is true that, as appellant claims, the actual offense of sexual performance by a child would have been impossible for appellant to *complete;* the complainant, Julie Cirello, did not physically exist. But completion of the crime was apparently possible to appellant. He had *specific intent* to commit the offense of sexual performance by a child, and he committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense. The State presented evidence for each of the necessary elements of attempted sexual performance by a child.

In conclusion, appellant's case does not present the doctrine of legal impossibility. The evidence presented at trial, reviewed in the light most favorable to the verdict, was sufficient for the trier of fact to rea-

---

2. Although each of these cases ultimately find that neither legal nor factual impossibility are valid defenses, the fact scenarios in each case demonstrate factual impossibility. The cases illustrate that the defendant's intent is the critical element in attempt offenses—not possible completion of the substantive offense.

sonably conclude that appellant was guilty of attempted sexual performance by a child. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The judgment of the court of appeals is affirmed.