# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00399-CR
NO. 03-05-00400-CR

**Lamar Elmer Smith, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NOS. CR-04-707 & CR-04-708, HONORABLE RONALD G. CARR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Lamar E. Smith, Jr., appeals his convictions for attempted sexual performance by a child and attempted aggravated sexual assault. *See* Tex. Pen. Code Ann. § 15.01 (West 2003), §§ 22.021, 43.25(b) (West Supp. 2005). The jury assessed punishment at five years' imprisonment and a $5,000 fine for the first offense and eight years' imprisonment and a $10,000 fine for the second offense, with the sentences to run concurrently. In three issues on appeal, appellant argues that the evidence is legally insufficient to support his convictions, and that the trial court erred by (i) denying appellant's request for a jury instruction on legal impossibility and (ii) by improperly allowing testimony regarding a prior criminal investigation during the punishment phase of the trial. Finding that the evidence was sufficient and the trial court did not err, we affirm the judgments of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2004, appellant selected a Yahoo! Internet service chat category named, "schools and education," and entered the user-created chat room named "girls like older men best." Identified on screen as "lskilleen," appellant then solicited an Internet conversation through an instant message feature, which allows two people to speak in real time privately to each other, with a user in the chat room named "jessiegurl323."[1] Jessiegurl323's profile identified her as "Jessica P.," a female "shoppin geek" from Texas. While the age question in jessiegurl323's profile was left blank, the section immediately below it stated, "im 13...I like talkin 2 peeps from tx." Jessiegurl323 was actually Sergeant Steven May, a criminal investigator in the cyber crimes unit of the attorney general's office, conducting an undercover investigation.

Appellant began his first conversation with jessiegurl323 on April 19 with an inquiry into her age, sex and location (referred to online as "asl"), to which she answered, "13 f huntzville." This was followed by appellant's request for, and receipt of, a digital photograph of her and a short discussion of her physical characteristics. Appellant then asked jessiegurl323 about her sexual preferences and experience. Among the questions he asked her was if she liked older men, and if she had ever been with an older man "sexually, and physically." Jessiegurl323 told appellant that she had not, to which he responded, "I haven't been with a young girl yet either but I want to." Jessiegurl323 ended the conversation a few minutes later, but not before appellant sent his e-mail address, adding, "email me please. . . . I live in killeen texas I would love to meet you."

---

[1] The spelling and grammar used by the parties and reproduced in the opinion reflects the shorthand used to quicken typing in chat rooms and instant messages.

Appellant began the next conversation with jessiegurl323 on the morning of June 3, 2004, in a similar fashion:

| | |
|---|---|
| lskilleen: | what's up |
| jessiegurl323: | heey |
| lskilleen: | whats your asl |
| jessiegurl323: | 13 f tx |
| lskilleen: | Do u like older guys |
| jessiegurl323: | yea |
| lskilleen: | Do you wanna hook up |
| jessiegurl323: | I don't know. . . do u |
| lskilleen: | yeah. . . .  Does my age bother you? |
| jessiegurl323: | I don't know how old u r |
| lskilleen: | 27. . . .  Is my age ok |
| jessiegurl323: | yea.  iz mine |
| lskilleen: | Yeah.  so u ever been with a man my age |
| jessiegurl323: | no |
| lskilleen: | so r u a virgin |
| jessiegurl323: | yea iz dat ok |
| lskilleen: | yeah if I get to have sex |
| jessiegurl323: | really |
| lskilleen: | YEAH |

Appellant then asked about her physical characteristics and her sexual experience in graphic sexual terms, and asked, "When can we meet." Jessiegurl323 responded, "I don't know whn can u," to which appellant responded "anytime." Appellant asked, "We gonna have sex when we meet," to which jessiegurl323 responded, "if u wnt 2." Appellant answered, "Hell yeah." Appellant then engaged jessiegurl323 in another obscene sexual discussion, which he followed by providing his phone number.

Later that afternoon, Appellant restarted the conversation by asking when jessiegurl323 would call him. Immediately after, appellant began describing, in an explicit manner, his sexual preferences and what he planned to do to jessiegurl323 during their sexual encounter. Towards the end of the conversation, appellant wrote, "I cant wait 2 see u. u will be the first kid that I have had sex. . . . I love young girls."

Appellant began the next conversation four days later by sending an instant message to jessiegurl323 on the morning of June 7, 2004. Appellant asked why she had not called him, and was eager to set a meeting time and place in the near future:

lskilleen:         is your parents home

jessiegurl323:   no

lskilleen:         are you by yourself?

jessiegurl323:   yea

        . . . .

lskilleen:         I could come down there

jessiegurl323:   whn

4

| | |
|---|---|
| lskilleen: | Today |
| jessiegurl323: | really. . . . whn can u b hear |
| lskilleen: | In a couple hours |
| jessiegurl323: | lik whn |
| lskilleen: | About 3 |
| jessiegurl323: | mom comez hm round then |
| lskilleen: | Can u get out of the house |
| jessiegurl323: | prolly not that late |
| lskilleen: | I could be there by 2 |
| jessiegurl323: | wat about tom[orrow] |
| | . . . . |
| lskilleen: | I gotta work. . . . I can be there by 2 |
| jessiegurl323: | prolly 2 late |
| lskilleen: | It wont take us 30 min 2 be done |

Appellant followed with another explicit sexual discussion and finished the conversation by writing, "When I put my dick in your mouth it will be like looking down at my own daughter."

Appellant restarted the conversation later that afternoon, again urging jessiegurl323 to call him. Soon after, a young-sounding female employee at the attorney general's criminal investigations division, pretending to be jessiegurl323 and acting in an undercover capacity, called appellant. In a short, taped conversation, appellant scheduled a meeting at 10 a.m. on June 9, 2004. In the lengthy online conversation that followed, appellant set the meeting at the Jack in the Box

5

restaurant in Buda, and then engaged in a graphic sexual conversation about the planned meeting and his previous molestation of his own seven-year-old daughter.

The next day, appellant began a conversation by seeking assurance that jessiegurl323 would be at the appointed restaurant at 10 a.m. When asked if he would show, appellant answered, "Oh yeah. Its not everyday I get 2 have sex with a kid," and told jessiegurl323 to expect him in a gold Chevrolet Malibu. Then, as in previous conversations, appellant began a graphic sexual conversation about the planned sexual encounter, laced with fantasies about his own daughter.

Sergeant May collected intelligence on the appellant. May found a gold Chevrolet Malibu registered at Fort Hood, in Killeen, and found its description and license plate number on a traffic citation given to appellant. May testified that the phone number listed on the citation matched the phone number given by "lskilleen" to jessiegurl323 during the Internet conversations and used by the officers to call "lskilleen" on June 7th. May contacted the Hays County Sheriff's Department and gathered additional investigators from the attorney general's office to conduct surveillance of the area.

Just after 9 a.m. on June 9, appellant sent an instant message to jessiegurl323 from his cellular phone while he was driving in route to Buda. Because May was in Buda waiting for appellant, he assigned Sergeant David Torsiello, also a member of the cyber crimes unit, to respond to appellant's instant messages. Torsiello testified that when he received appellant's message, he called May, who then told him how to reply to appellant, letter by letter. May testified that this was done "so that [Torsiello] would have my style and not his style so that it would be mimicking what I had previously done. . . ." May testified that he had since reviewed the transcript of the

6

conversation and that Torsiello had followed his instructions. This short conversation is reproduced below in its entirety:

lskilleen: Hi

jessiegurl323: heeeey

lskilleen: U ready

jessiegurl323: yea ill b there u gunna b ther

lskilleen: Yeah, I just went through austin

jessiegurl323: kewl . . im gunna get redy and start walkin. c ya ther

lskilleen: Wut u wearin

jessiegurl323: pink tanktop and shrtz

lskilleen: OK

jessiegurl323: by

lskilleen: bye

May testified that at 9:40 a.m. appellant's gold Chevrolet Malibu entered the Jack in the Box parking lot, where it was identified by license plate number and driver description. After the car and its driver were positively identified, appellant was arrested. In the vehicle, officers found a cellular phone in the center console and a digital camera in the glove compartment.

In two indictments, appellant was charged with attempted sexual performance by a child, criminal solicitation of a minor, and attempted aggravated sexual assault. At trial, appellant attempted to show that he believed that jessiegurl323 was an adult who was playing a malicious trick

7

at his expense, possibly because he was a veteran of the Iraq war, and that he visited the Jack in the Box on his way to the outlet mall in San Marcos because he wanted to identify this person. Appellant also argued that he could not be guilty of criminal solicitation as charged because none of the communications between appellant and the officers originated from within Hays County.

The jury found appellant guilty of attempted sexual performance by a child and attempted aggravated sexual assault. Appellant was acquitted of criminal solicitation.

## ANALYSIS

### *Admission of Testimony*

In his first issue, appellant argues that during the punishment phase of the trial, the trial court erroneously admitted testimony regarding the army's discovery of child pornography on his service-issued laptop computer in violation of his Sixth Amendment rights to confrontation and trial by jury. *See* U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36 (2004); *Blakley v. Washington*, 542 U.S. 296 (2004). The state responds that the testimony was properly admitted as an admission by a party opponent. *See* Tex. R. Evid. 801(e)(2).

The procedural guarantees of the confrontation clause are not implicated by non-testimonial evidence. *See Crawford*, 541 U.S. at 68-69. Guided by the historical evolution of the confrontation clause and the specific language of the Sixth Amendment, the Supreme Court identified three types of testimonial statements: (1) *ex parte* in-court testimony or its functional equivalent; (2) extrajudicial statements contained in formalized testimonial materials; and (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Id.* at 51-52. The Court

8

added, "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51.

Before the jury during the punishment phase of the trial, appellant's ex-wife, Sarah Smith, testified that appellant told her that the army had confiscated his service-issued laptop computer and discovered child pornography on its hard drive:

Q: Was the laptop—did Lamar Smith disclose anything unusual related to [his Army-issued] laptop computer to you?

A: He did. While deployed to Guantanamo Bay, Cuba, he had called me—I was in school in Virginia for the military—and he told me that his computer had been confiscated, that they had found child pornography on the computer.

Applying the third, and broadest, formulation of "testimonial" to ensure compliance with the confrontation clause, we believe that an objectively reasonably declarant, standing in the shoes of appellant, would not believe that his comments in a telephone conversation with his then-wife about a sensitive matter soon after it occurred would be available for use at a later trial. *See id.* at 51-52. Because appellant's out-of-court statement does not fit into any of the three types of testimonial statements, it is non-testimonial, and the "bedrock procedural guarantees" of the confrontation clause, applicable to both state and federal prosecutions, are not violated by its admission into evidence. *See id.* at 42.

In the instant case, appellant's out-of-court statement was properly admitted as an admission by a party opponent. *See* Tex. R. Evid. 101(c), 801(e)(2). Texas Rule of Evidence 801(e)(2)(a) "plainly and unequivocally" states that a criminal defendant's own statements, when being offered against him, are not hearsay. *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App.

1999). A party's own statements are admissible non-hearsay on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements. *Id.*

Appellant also contends that, because he has neither admitted to nor been convicted of possessing child pornography, the admission of Ms. Smith's testimony violated his constitutional right to a jury trial as discussed in *Blakely v. Washington*. *See* 542 U.S. 296. *Blakely* reaffirmed the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory amount must be submitted to a jury and proved beyond a reasonable doubt. 542 U.S. at 301. In *Blakely*, the petitioner was sentenced to more than three years above a 53-month statutory maximum because a judge determined that he acted with "deliberate cruelty." *Id.* at 303. The State of Washington contended that the sentence did not violate *Apprendi* because the relevant "statutory maximum" was the 10-year maximum for class B felonies in that state. *Id.* The Supreme Court reversed and remanded, holding that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* at 303-04. In the instant case, appellant was convicted of attempted sexual performance by a child, which carries a possible sentence of 2-10 years, and attempted aggravated sexual assault, which carries a possible sentence of 2-20 years. Both charges carried a maximum $10,000 fine. The jury assessed mid-range punishments: five years' imprisonment and a $5,000 fine for the first offense and eight years' imprisonment and a $10,000 fine for the second offense, with the sentences to run concurrently. *Blakely* is not applicable here. We overrule appellant's first issue.

*Mere Preparation*

In his second and third issues, appellant contends that his acts amounted to no more than "mere preparation" to commit the offenses, as that standard was interpreted regarding sexual attempt crimes in *Chen v. State*, 42 S.W.3d 926 (Tex. Crim. App. 2001). Appellant further contends that, as a result, the trial court erred in denying an instruction for legal impossibility in the jury charge and the evidence is legally insufficient to support his conviction. The State responds that appellant's sexually explicit online chats for the express purpose of soliciting a thirteen-year-old girl for sex, and his driving to and arrival at an agreed-upon meeting place to effectuate that purpose, constitute more than "mere preparation" as required by the penal code. *See* Tex. Pen. Code Ann. § 15.01(a) (West 2003).

Contrary to appellant's assertions, *Chen v. State* did not establish any requirements for sexual attempt convictions beyond those in the statute. In *Chen*, the defendant made plans, via the Internet, to meet a thirteen-year-old girl and have sexual relations with her, and then reserved a motel room and brought condoms and lubricant to the meeting place. *Chen*, 42 S.W.3d at 928. The young girl was actually a Dallas police officer conducting an undercover investigation, and Chen was arrested in the parking lot of the motel. *Id.* at 927. On appeal, Chen argued that it was legally impossible for the State to prove a "completed" offense because the child did not exist, and the court of criminal appeals addressed only this issue. *Id.* at 927-28. The court of criminal appeals in *Chen* did not require condoms, lubricant or motel reservations to satisfy the attempt standard set forth in the penal code. *See id.* at 930-31.

11

Here, we must determine if appellant's communications with jessiegurl323, coupled with appellant's act of driving to the agreed-upon location, constitute more than "mere preparation." Appellant's conduct can be divided into two categories. First, appellant communicated over the Internet and through e-mail with Sergeant May, who was posing as a thirteen-year-old female. Appellant selected a Yahoo! Internet service chat category named, "schools and education," and entered the user-created chatroom named "girls like older men best." Appellant read the profile of jessiegurl323, knew that it listed her age as thirteen, and confirmed that fact with her on the Internet when he initiated the conversations. Appellant initiated all of the sexually-explicit online chats, which were conducted for the express purpose of soliciting a thirteen-year-old girl for sex. During the chats, he expressed his desire in an obscene manner: "I love young girls," "its not everyday that I get to have sex with a kid," and "when I put my dick in your mouth it will be like looking down at my own daughter." Appellant received two pictures of a thirteen-year-old girl, sent by May, and, upon their receipt, he remarked that she was cute and that she looked "about twelve" years old. Appellant eventually enticed her to meet him at a prearranged meeting place.

Appellant's second act, the specific act of driving to the agreed-upon meeting place, is corroborative action. Such conduct goes beyond remote preparatory activity and confirms a criminal design. Appellant communicated his desire to have sexual contact with a person he thought was a thirteen-year-old female. Appellant told jessiegurl323 that he wanted her to dress in a way that made her "look as young as possible," and requested that she not wear panties and a bra under her outfit. Appellant asked jessiegurl323 if he could insert his penis into her "mouth pussy and ass." Throughout the conversations, appellant stated his intentions to engage in sexual contact, sexual

intercourse, and deviate sexual intercourse with her. Appellant arranged to meet the child at a specific time and place and called from Austin, midway through the ninety mile drive, to see if she was ready and to let her know that he was on his way. Appellant then traveled to the meeting place at the appointed time.

Given that the minor did not actually exist, appellant took every possible step he could have taken in order to commit the offenses of sexual performance by a child and aggravated sexual assault. Therefore, legal impossibility is not a defense here. Legal impossibility exists "where the act if completed would not be a crime, although what the actor intends to accomplish would be a crime." *Lawhorn v. State*, 898 S.W.2d 886, 891 (Tex. Crim. App. 1995). It has also been described as existing when "what the actor intends to do would not constitute a crime, or at least the crime charged." *Id.* If jessiegurl323 had been an actual thirteen-year-old girl, then what appellant intended to accomplish, sexual performance by a child and aggravated sexual assault, constituted an actual crime. *See Chen*, 42 S.W.3d at 930. Appellant's goal was to commit the offenses of sexual performance by a child and aggravated sexual assault. *See id.* Because those acts are crimes by law, the doctrine of legal impossibility is not an issue in this case. *See id.*

Appellant had the specific intent to commit the offenses of sexual performance by a child and aggravated sexual assault*,* and he committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense. In assessing the legal sufficiency of the evidence to support a conviction, we find that a rational jury could have found the accused guilty of all of the elements of the offense beyond a reasonable doubt. *See Jackson v.*

13

*Virginia*, 443 U.S. 307, 318-19 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

We overrule appellant's second and third issues.

## CONCLUSION

Because appellant has not shown any reversible error, we overrule his issues and affirm the judgments of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   March 16, 2006

Do Not Publish