**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00187-CR**
_____

**DARRAGH LIAM SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-04-04620-CR**

**MEMORANDUM OPINION**

A jury convicted Darragh Liam Smith of attempted aggravated sexual assault of a child.[1] In an appeal in which he raises one issue, Smith argues the evidence in his trial cannot support the jury's verdict. For the reasons explained below, we affirm.

_____

[1] *See* Tex. Penal Code Ann. §§ 15.01, 22.021.

1

Background

In 2017, a grand jury indicted Smith for attempted aggravated sexual assault of a child. The indictment alleges that, on or before April 10, 2017, Smith, intending "to commit the offense of aggravated sexual assault of a child . . . travel[ed] to a predetermined meeting location with condoms, duct tape, a digital camera, and sex lube, amounting to more than mere preparation that tended to but failed to effect the commission of said offense[.]"

When the court called the case to trial, Smith pleaded not guilty. At trial, one witness testified for the State, a detective employed by a Montgomery County Constable's Office. The detective explained he works on a task force conducting investigations that involve illegal sexual acts directed at children by people who use the internet for that purpose. The detective testified he creates fictitious identities and uses them on the internet in posting messages on websites used by individuals who are using the site to discuss various taboo sexual acts. On at least one of these sites, the detective used the name *Jessica*. He posted messages using that name in a chat group on the site.[2] Smith contacted the detective in February 2017 using the

---

[2] According to the detective, he participates in "at least five or six" internet chat groups. As is relevant here, the detective, as *Jessica*, used the internet with a computer and a phone to exchange messages with Smith. For convenience, we italicize the relevant fictitious identities the detective used in his conversations with

detective's fictitious name *Jessica* through a computer application used to send digital messages to others who are active on this site. Smith's first message states: "Hey Jessica. What's up? You were in the taboo group on here. What kind of taboo things are you into?" *Jessica* answered: "Mother - son mother - daughter[.]"

Over the next two months, Smith and *Jessica* exchanged countless messages. As *Jessica*, the detective told Smith in one message *she* was twenty-eight-years old, with an eight-year-old daughter. Ultimately, *Jessica* told Smith *her* daughter's name was *Kelly*. According to the detective, Smith's messages suggested Smith was interested in having sex with *Jessica* and *Kelly*. The trial court admitted the messages Smith exchanged with *Jessica* into evidence during the trial.

We need not discuss the contents of each message admitted in the trial. In general, the detective's description of them shows that on more than one occasion, Smith expressed an interest in *Kelly*. For example, one of Smith's messages states: "[W]ill you keep your daughter home from school on Tuesday?" *Jessica* replied *she* would and then said "[t]his isn't fantasy or role play this is totally real deal[.]" Smith replied: "Cool deal."

---

Smith so it's clear when the context of the discussion in the opinion is referring to someone who is not really a person.

3

Smith later asked *Jessica* whether "*Kelly* [has] had cock before? — I'm guessing I should probably bring lube too." In another message, Smith told *Jessica* that after deciding whether the "chemistry is right[,]" he would "like to finger [*Kelly*.]" The only time Smith mentions using lube is in one message where he discusses the prospect of having vaginal intercourse with *Kelly*. In March 2017, Smith sent *Jessica* a message asking her to meet him in the parking lot of a bowling alley in Montgomery County. *Jessica* told Smith that after they met, he might go with *her* "back to my place[.]" In response, Smith responded: "We'll see once we meet . . . And condoms for [*Kelly*] but not you right?" We also note the only time *Jessica* and Smith mention using condoms is in the context of messages discussing Smith having sex with *Kelly*.

Smith and *Jessica* discussed meeting several times before April 2017. None of those meetings, however, occurred. On April 9, 2017, Smith sent *Jessica* a message proposing they meet and stating he wanted to have sex with *her* the next day. By message, *Jessica* then told Smith she was at home since *her* daughter was sick. The next day, Smith sent *Jessica* a message telling *her* he could come by *her* apartment, they could meet outside, "and if it's all good then we go inside if not I'll leave." *Jessica* asked Smith what to expect should they meet. Smith replied:

> We go inside. I meet your daughter. The three of us talk for a little bit about what is going to go down so she understands. Then you and I go

4

to your bedroom and your daughter can join when she's ready. If she doesn't want to watch that's fine then the sex will just be between two consenting adults[.]

*Jessica* then sent Smith the address where he could meet *her*. Smith told *Jessica* he would be there in about thirty minutes.

The detective and several other officers were waiting for Smith when he arrived at the address. Several officers approached Smith's car and arrested Smith. Smith had two condoms on him when arrested. According to Smith, who testified in the trial, he intended to use these as well as the other sexually related items in his car with *Jessica* when they had sex. Additionally, the officers found lube, duct tape, and a camera in Smith's car.

Smith and a clinical psychologist testified in Smith's defense. The clinical psychologist specializes in "evaluating and treating individuals who have problematic sexual behavior who have been arrested for a sexual offense or . . . have gotten into trouble because of excessive or problematic sexual behavior among adults." She explained that Smith, in her opinion, is not a pedophile based on the tests she gave him. And the psychologist testified her testing did not show Smith had a sexual interest or attraction to children.

In part, the psychologist's testimony addresses why she believes some people are interested in exchanging information about sex with people they do not know.

She characterized the practice as common. She explained that some individuals who use websites to discuss subjects involving sexual taboos and discussing sexual acts with others pretend as if they are interested in the subject because doing so appeals to the prurient interest that some people have in sex. The psychologist stated others who use these types of sites to contact others and discuss sexual acts may misrepresent their true sexual interest in a specific act so the person they have engaged in discussion will not lose interest in talking with them.

When Smith testified, he denied he ever had any sexual interest in *Kelly*. Smith explained he wanted to meet *Jessica* to have sex with *her*, but he was never interested in having sex with *Kelly*. Smith sought to explain during the trial why his messages made it appear he was interested in *Kelly*. He suggested he made comments about *Kelly* so *Jessica* would stay interested in him, noting *she* is the one who indicated *she* enjoyed having sex with *Kelly*. Smith also testified he never believed *Jessica* had an eight-year-old daughter. According to Smith, he sent *Jessica* messages that referenced *Kelly* only when *Jessica* brought *Kelly* up in the messages *she* sent him, claiming he did so only to keep *Jessica* interested in meeting and having sex with him.

The jury found Smith guilty of attempted sexual assault of a child, as alleged in the indictment. Smith elected to allow the trial court to assess his punishment.

After a punishment hearing, the trial court gave Smith a ten-year sentence.[3] About six months later, the trial court granted Smith's motion for "shock probation,"[4] suspended Smith's sentence, and placed him on community supervision for five years.

Analysis

On appeal, Smith presents a single issue—whether the evidence supports the jury's verdict finding him guilty of attempted aggravated sexual assault of a child. Smith offers two arguments to support his issue, and generally, he argues the evidence fails to prove his guilt guilty beyond reasonable doubt. Specifically, Smith argues the evidence fails to show he intended to have sex with *Kelly* or that it at most shows he did nothing more than merely prepare  without crossing the line to attempting to commit the crime.

Briefly, we address the standard of review that applies to our review of the Smith's issue. To decide whether the evidence in a trial supports a defendant's conviction, we review the evidence the jury heard in the light most favorable to the

---

[3] Attempted aggravated sexual assault of a child is a second-degree felony, punishable by between two and twenty years in prison. *See id.* §§ 12.33(a), 15.01(d), 22.021(e).

[4] *See* Tex. Code. Crim. Proc. Ann. art. 42A.202.

jury's verdict.[5] In our review, we determine whether the evidence considered in the trial allowed the jury to find the defendant guilty beyond reasonable doubt.[6] This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence."[7] Stated another way, our role is to determine "whether the necessary inferences made by the trier of fact are reasonable, based upon the cumulative force of all of the evidence."[8]

In our review, we presume the jury resolved any conflicts in the evidence in favor of the verdict if the jury could have reasonably resolved the conflicts that way.[9] We must defer to the jury's right, as the factfinder, to decide what evidence is (or is not) credible.[10] A reviewing court must also give a jury wide latitude to decide what weight it chooses to give the evidence admitted in the defendant's trial.[11] In other words, the reviewing court does not sit as a thirteenth juror, thereby substituting its

---

[5] *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010).
[6] *Id.*
[7] *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011).
[8] *Id.*; *see also Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012).
[9] *Brooks*, 323 S.W.3d at 922; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
[10] *Brooks*, 323 S.W.3d at 899.
[11] *Id.*

view of the evidence for the one adopted by the jury.[12] When evaluating the evidence admitted in the trial, a jury may choose to weigh circumstantial evidence the same way it weighs direct evidence in deciding the defendant's guilt.[13] If the conviction relies largely on circumstantial evidence, the situation before us here, the standard of review does not require each piece of evidence to point directly and independently to the defendant's guilt.[14] To decide if the jury's conclusion is supported by the evidence, we evaluate the combined and cumulative force of the evidence the jury could have credited in finding the defendant guilty of the crime.[15]

A person attempts to commit a crime if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."[16] Under the Penal Code, the crime of sexual assault involving a child may be proven by establishing the defendant intended to commit one or more of several sexual acts.[17] For instance, if the victim was younger than fourteen at the time of the alleged crime, the State can prove a defendant committed aggravated sexual assault by proving the defendant (1)

---

[12] *Id.*

[13] *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

[14] *See Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013).

[15] *Id.*

[16] Tex. Penal Code Ann. § 15.01(a).

[17] *See id.* § 22.021.

penetrated the child's anus or sexual organ by any means, (2) penetrated the child's mouth with his sexual organ, (3) caused the child's sexual organ or anus to contact or penetrate his or another person's mouth, anus, or sexual organ, or (4) caused the child's mouth to contact his or another person's anus or sexual organ.[18]

Turning to the element of intent, a person *intends* an act "when it is his conscious objective or desire to engage in the conduct or cause the result."[19] Juries may infer the defendant's intent from his actions, words, and conduct.[20] Thus, in our review of Smith's arguments, we examine the evidence to determine whether reasonable jurors could have concluded beyond a reasonable doubt that Smith *intended* to commit one of the above described prohibited sexual acts.[21] In Smith's case, the messages in evidence reflect Smith repeatedly told *Jessica* he wanted to engage in sexual acts with *Jessica* and *Kelly*. The acts Smith describe include acts involving children prohibited by the Penal Code.[22] For instance, Smith's messages state he wanted to engage in acts involving oral and vaginal sex with *Kelly*. Even Smith, in his brief, acknowledge the messages he sent *Jessica* describe "illegal sex

---

[18] *Id.* § 22.021(a)(1)(B).

[19] *Id.* § 6.03(a).

[20] *Elizondo v. State*, 487 S.W.3d 185, 201 (Tex. Crim. App. 2016).

[21] Tex. Pen. Code. Ann. § 22.021(a)(1)(B).

[22] *Id.*

10

acts with [*Kelly*.]" That said, Smith argues the jury should have viewed the messages as proving no more than he engaged *Jessica* in a role-playing fantasy.

In reviewing the evidence, we look to all the evidence the jury considered in Smith's trial.[23] The evidence before the jury shows Smith arrived at the meeting with condoms and lube, two items Smith's and *Jessica*'s messages mention only in the context of discussing sex acts between *Kelly* and Smith. The evidence also shows that the day before Smith and *Jessica* met, Smith sent *Jessica* a message stating he wanted to meet *Kelly*. The morning of the meeting, *Jessica* sent Smith a message asking what to expect were *she* to invite him in. He responded with a message stating *Jessica* could introduce him to *Kelly,* the three of them could talk, he and *Jessica* could go to her bedroom, and *Kelly* could join them there if *she* just wanted to watch.

Smith asserts the evidence falls short of proving he attempted a crime. To support that argument, Smith points to some messages where *Jessica* suggested he would pay her $80 to have sex with *Kelly.* But when the officers arrested Smith, the evidence shows he did not have the money he and *Jessica* had discussed in their messages.[24] Smith also suggests the messages he sent *Jessica* on the day of the meeting say nothing about having sex with *Kelly*. But his argument overlooks the

---

[23] *See Temple*, 390 S.W.3d at 359.
[24] Smith testified he had no money with him at the time of his arrest.

message he sent *Jessica* the morning he went to the meeting which suggested the three of them could talk before proceeding any further to allow *Kelly* to understand what he wanted from *her* that day. Moreover, the fact Smith had no money with him when he was arrested does not mean the jury could not have found he was not in a position to have obtained money to pay *Jessica* that day.

The crime of attempt involves an imaginary line separating "mere preparatory conduct" from "an act which tends to effect the commission of the offense."[25] To prove a defendant attempted to commit a crime, the State need not prove the defendant committed every element involved in a crime short of the offense itself.[26] Rather, courts draw the line between non-criminal conduct and criminal attempt on a case-by-case basis, thus a court's evaluation of the evidence involves the nature of the crime as well as the evidence admitted in the defendant's trial.[27]

To be sure, Smith might have changed his mind after meeting with *Jessica* about following through on his statements about engaging in sexual acts with *Kelly*. But the jury was entitled to rely on the fact that he acted on his intentions by bringing condoms and lube with him, as these are items he and *Jessica* discussed solely in the

---

[25] *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984).
[26] *Gibbons v. State*, 634 S.W.2d 700, 706 (Tex. Crim. App. [Panel Op.] 1982).
[27] *Id.* at 707; *Jones v. State*, 229 S.W.3d 489, 497-98 (Tex. App.—Texarkana 2007, no pet.).

12

context of his engaging in a sexual act with *Kelly*.[28] On this record, we conclude Smith crossed the line that exists between preparing to commit a crime and attempting it.[29]

Smith's suggests the jury failed to weigh the psychologist's testimony properly in reaching its conclusion he was guilty, but that argument is also without merit. While the psychologist expressed her opinion about what she believed Smith intended in his messages to *Jessica*, the jury had a right to disagree with her given the words Smith used in the messages and the fact he had the lube and condoms with him when he came to the meeting that day. As to the psychologist's suggestion that Smith merely engaged in a role-playing fantasy, as he claims, she also explained that some of Smith's messages contain information Smith gave *Jessica* that was true. For instance, Smith told *Jessica* he worked as a teacher, which was the occupation he had at the time of his arrest. He also he gave *Jessica* his correct age. Moreover, the psychologist agreed that (1) sometimes people fantasize about things in messages

---

[28] *See Gibbons*, 634 S.W.2d at 706.

[29] *See Chen v. State*, 42 S.W.3d 926, 927 (Tex. Crim. App. 2001) (explaining the record contained sufficient evidence of guilt of an attempted sexual crime where the evidence in the trial showed the defendant communicated online about his plans for sex, agreed to meet at a motel, drove to the motel, and brought condoms to the meeting).

and reveal what they want, (2) sometimes engage in role-playing fantasies that become real, and (3) it's abnormal for an adult to talk about having sex with children.

In resolving the conflicts in the evidence, the jury was entitled to "accept one version of the facts and reject another, and it [could] reject any part of a witness's testimony."[30] Thus, acting as the factfinder, the jury was entitled to accept or reject any part of the psychologist's testimony as well as that offered by Smith.[31] In Smith's case, the evidence he did not intend to have sex with *Kelly* was not testimony based on either indisputable or solely objective facts.[32] Smith (for obvious reasons) was interested in the outcome of his trial. The psychologist Smith called provided the jury with her opinion about what she believed Smith intended. On this record, the jury was just as capable as Smith and his expert in drawing ultimate conclusions about Smith's intent.[33]

---

[30] *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018).

[31] *See id.*

[32] *See Braughton v. State*, 569 S.W.3d 592, 612 (Tex. Crim. App. 2018).

[33] *See Ex parte Flores*, 387 S.W.3d 626, 637-38 (Tex. Crim. App. 2012)(stating jury might have disbelieved highly qualified expert); *Graham v. State*, 566 S.W.2d 941, 951 (Tex. Crim. App. 1978)(noting for a mixed medical and factual issue such as insanity, the jury could disregard even uncontradicted expert testimony); *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998) ("The trier of fact is always free to selectively believe all or part of the testimony proffered and introduced by either side."); *Cf. City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005) (explaining "[e]ven uncontroverted expert testimony does not bind jurors unless the subject matter is one for experts alone").

We hold the evidence allowed the jury to find Smith guilty of attempting to commit an aggravated sexual assault against *Kelly*. Because the evidence supports his conviction, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 28, 2020
Opinion Delivered April 1, 2020
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.