TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00310-CR

NO. 03-06-00311-CR






Phillip Ashcraft, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT

NOS. CR-04-252 & CR-04-253, HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 In two cases consolidated for trial, a jury convicted Phillip Ashcraft of the offenses
of attempted sexual assault of a child, attempted sexual performance by a child, and two counts of
criminal solicitation of a minor. See Tex. Penal Code Ann. § 15.01 (attempt) (West 2003),
§§ 15.031 (criminal solicitation of a minor), 22.011(a)(2) (sexual assault of a child), 43.25
(sexual performance by a child) (West Supp. 2007). The jury assessed punishment at eight and ten
years' imprisonment for the two counts of criminal solicitation of a minor, ten years' imprisonment
for attempted sexual assault of a child, and ten years' imprisonment for attempted sexual
performance by a child. In eight points of error, Ashcraft claims that the indictment for attempted
sexual assault should have been quashed, challenges the legal and factual sufficiency of the evidence
supporting his conviction for attempted sexual assault of a child, asserts that venue in Hays County
was improper, and contends that the prosecutor engaged in improper jury argument during
sentencing. We will affirm the judgments.


BACKGROUND

 This appeal involves what the Cyber Crimes Division of the Attorney General's
Office refers to as a "criminal solicitation traveler case." According to FBI special agent
Karen McKay, a former agent with the Cyber Crimes Division and the State's key witness in this
case, "A traveler case is criminal solicitation where someone solicits a minor online to travel to meet
them to engage in sexual intercourse."

 The underlying facts are not in dispute. The jury heard evidence that in 2004,
Agent McKay was posing online as "haileyhayes14," a fourteen-year-old girl. While in a chat room
entitled, "I Like Older Men Best," McKay was contacted by an individual with the screen names
"thebigboner36" and "milfhunt66." The evidence showed that these screen names belonged
to Ashcraft. McKay testified that between February 2 and February 18, 2004, Ashcraft made
numerous online sexual solicitations to "haileyhayes14." The text of these online conversations were
admitted into evidence. McKay further testified that Ashcraft ultimately arranged to meet her at
a restaurant in Buda. According to McKay, Ashcraft informed her that he would be driving a
green Ford pickup truck.

 On the morning of February 18, 2004, the day that Ashcraft had arranged to meet with
"haileyhayes14," immediately prior to departing for Buda, Ashcraft initiated a final chat session with
McKay. Because this conversation is relevant to our sufficiency analysis, we reproduce it below:


 thebigboner36: hey

 

 haileyhayes14: hey

 haileyhayes14: whtcha doin

 

 thebigboner36: getting dressed u

 

 haileyhayes14: kewl u still gone come

 

 thebigboner36: you sure

 

 haileyhayes14: yea u

 

 thebigboner36: just a little nervous that you might be a cop or
a guy

 

 haileyhayes14: ur a cop???? u said u werent

 

 thebigboner36: no u might be

 

 haileyhayes14: no im not

 

 thebigboner36: i dont want to go to jail

 

 haileyhayes14: i dont either

 

 thebigboner36: ok

 

 haileyhayes14: mom wuld kill me

 

 thebigboner36: so what will you be wearing

 

 haileyhayes14: ummm dont get mad but ima wear a pink shirt
an jeans and sandals ima bring a skirt thouh
and change cuz its cold k?

 

 thebigboner36: ok its a little cold

 

 haileyhayes14: yea

 haileyhayes14: u not mad r u

 

 thebigboner36: no you dont have to bring it

 haileyhayes14: u sure

 

 thebigboner36: yep

 

 haileyhayes14: k

 

 thebigboner36: are you really sure you want to do this because
its a long drive for me for nothing

 

 haileyhayes14: im sure r u

 

 thebigboner36: only if you are

 

 haileyhayes14: i am

 haileyhayes14: how far is it

 

 thebigboner36: 2-3 hours

 

 haileyhayes14: wow ok

 

 thebigboner36: so what if I get there and you change your
mind or dont like me

 

 haileyhayes14: i wont k

 

 thebigboner36: ok if you say so

 

 haileyhayes14: i wont

 

 thebigboner36: and you better be the girl in the pic u sent me

 

 haileyhayes14: u better be u i am silly

 

 thebigboner36: you have seen me

 

 haileyhayes14: i know

 

 thebigboner36: for real

 thebigboner36: i haven't seen you

 

 haileyhayes14: u have


 thebigboner36: not for real

 thebigboner36: be up there at 11 no sooner

 

 haileyhayes14: k


 thebigboner36: ill be looking for you

 

 haileyhayes14: k

 haileyhayes14: wht u wearin

 

 thebigboner36: ill honk or pick u up

 thebigboner36: its safer for me that way just incase

 

 haileyhayes14: k

 

 thebigboner36: your wearing pink top

 

 haileyhayes14: yep

 

 thebigboner36: ok ill look or honk

 

 haileyhayes14: k

 haileyhayes14: where u gone b

 

 thebigboner36: were meeting at the jack-n-the box

 thebigboner36: or if i see you walking

 

 haileyhayes14: k

 

 thebigboner36: toes painted

 

 haileyhayes14: yep red

 

 thebigboner36: ok ill ask you one more time

 thebigboner36: are you really sure

 thebigboner36: i am

 

 haileyhayes14: yea i am

 

 thebigboner36: ok you promise

 

 haileyhayes14: yep pinky swear do u

 thebigboner36: and youll keep it between us

 

 haileyhayes14: yep will u

 

 thebigboner36: if you say anything to anyone even your
friends i will go to jail not you

 

 haileyhayes14: i wont tell no one k

 haileyhayes14: u gone tell or show
anyone the pics u take

 

 thebigboner36: nope

 

 haileyhayes14: promise

 

 thebigboner36: promise

 thebigboner36: i said that

 

 haileyhayes14: k

 haileyhayes14: u gone bring

 haileyhayes14: the cam and other stuff

 

 thebigboner36: im leaving now be up
there at 11 ill be there
around 11:30

 thebigboner36: yes

 thebigboner36: ill bring it

 

 haileyhayes14: k

 

 thebigboner36: see you later

 

 haileyhayes14: k

 

 thebigboner36: are you scared

 

 haileyhayes14: ummm a lil but ur kewl

 

 thebigboner36: dont change your mind while im on the road

 thebigboner36: my dick is alrady hard so can you fix that


 haileyhayes14: yep

 haileyhayes14: hehehehe

 haileyhayes14: c yah soon


 thebigboner36: ok bye

 

 haileyhayes14: bye ill go get my stuff ready k

 

 thebigboner36: what stuff you bringing

 

 haileyhayes14: no get my clothes ready silly and bath

 

 thebigboner36: ok bye

 

 haileyhayes14: bye


 At approximately 11:25 a.m., Ashcraft pulled into the parking lot of the Buda
Jack-in-the-Box driving a green Ford Ranger pickup truck. Several police officers were at the
restaurant waiting for him, including Agent McKay and Sergeant Jennifer Bloodworth, also with the
Attorney General's Cyber Crimes Division. Sergeant Bloodworth's job was to be inside the
restaurant and pose as "haileyhayes14." When Ashcraft pulled into the parking lot, Bloodworth
observed that he "appeared to be driving very slow as if he was looking for someone inside." 
Bloodworth testified, "As he pulled around I kind of looked over my shoulders and just kind of gave
him a wave to verify that I was who he was looking for, which was Hailey Hayes, the 14-year-old
female. At that point he pulled around and parked." Bloodworth added, "I did observe him kind of
wave over the steering wheel." Once Ashcraft parked, the other officers approached his vehicle and
immediately arrested him. Upon searching Ashcraft's vehicle, officers found a digital camera, a
stuffed animal, and a book entitled, "Travel Coupon Guide Motel/Hotel Discounts."

 In two indictments, Ashcraft was charged with multiple sexual offenses. In cause
number CR-04-252, Ashcraft was charged with attempted sexual assault of a child. In cause number
CR-04-253, Ashcraft was charged with attempted sexual performance by a child and two counts of
criminal solicitation of a minor. The causes were consolidated for trial. The jury found Ashcraft
guilty of the offenses as charged in the indictments. This appeal followed.


ANALYSIS

Motion to quash

 In his first point of error, Ashcraft asserts that the district court erred in denying
his motion to quash the indictment for attempted sexual assault of a child. Specifically, Ashcraft
argues that, because the indictment did not allege the name of the complainant, it failed to give him
"precise notice of the offense of which he is being accused."

 When reviewing a trial court's decision to deny a motion to quash an indictment,
we apply a de novo standard of review. Lawrence v. State, 240 S.W.3d 912, 915
(Tex. Crim. App. 2007) (citing State v. Moff, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004)). 
The right to notice is set forth in both the United States and Texas Constitutions. See
U.S. Const. amend. VI; Tex. Const. art. I, § 10. Thus, the charging instrument must be specific
enough to inform the accused of the nature of the accusation against him so that he may prepare a
defense. Moff, 154 S.W.3d at 601. Generally, an indictment that tracks the language of a criminal
statute is sufficient to allege an offense and to provide a defendant with notice of the charged
offense. State v. Edmond, 933 S.W.2d 120, 127-28 (Tex. Crim. App. 1996); see also DeVaughn
v. State, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988).

 Upon the filing of a timely motion to quash, the indictment must be analyzed to
determine whether it states on its face the facts necessary to allege that an offense was committed,
to bar a subsequent prosecution for the same offense, and to give the accused notice of the precise
offense with which he is charged. DeVaughn, 749 S.W.2d at 67; Rotenberry v. State, 245 S.W.3d
583, 586 (Tex. App.--Fort Worth 2007, pet. ref'd). A motion to quash should be granted only where
the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant
effective notice of the acts he allegedly committed. Yanes v. State, 149 S.W.3d 708, 709
(Tex. App.--Austin 2004, pet. ref'd).

 In this case, the indictment at issue stated the following:


On or about February 18, 2004, in Hays County, Texas, Phillip Ashcraft
a/k/a "thebigboner36" and "milfhunt66" did then and there, with the specific intent
to commit the offense of Sexual Assault of a Child, did an act, to-wit: used Internet
communications to set up a meeting with someone he believed to be a child and
intentionally and knowingly traveled to meet said person for the purpose of engaging
in sexual intercourse, which amounted to more than mere preparation that tended but
failed to effect the commission of the offense intended.


This indictment tracks the language of the criminal attempt statute. See Tex. Penal Code Ann.
§ 15.01 ("A person commits the offense of criminal attempt if, with specific intent to commit an
offense, he does an act amounting to more than mere preparation that tends but fails to effect the
commission of the offense intended."). Additionally, the indictment states specific details about
when, where, and how Ashcraft allegedly committed the offense. Although the indictment does not
name a complainant, because the State alleged an offense that "centers on the mental state and
actions of the perpetrator, and not on the harm done to the victim," the State was not required
to name a complainant. See Yanes, 149 S.W.3d at 711; see also Cody v. State, 605 S.W.2d
271, 274 (Tex. Crim. App. 1980) ("An indictment for criminal attempt is not fundamentally
defective for failure to allege the constituent elements of the offense intended."); In re J.B.M.,
157 S.W.3d 823, 825 (Tex. App.--Fort Worth 2005, no pet.) (in case involving prosecution for
attempted sexual assault, holding that "when a defendant is charged under the criminal attempt
statute, the State is only required to plead the elements of a criminal attempt offense, and need not
allege the constituent elements of the underlying offense."). We find that the indictment in this
particular case "states on its face the facts necessary to allege that an offense was committed, to bar
a subsequent prosecution for the same offense, and to give the accused notice of the precise offense
with which he is charged." See Rottenberry, 245 S.W.3d at 586.

 Furthermore, even were we to find that the indictment provided Ashcraft with
insufficient notice, such error would be reversible only if, in the context of the case, this lack of
notice had an impact on Ashcraft's ability to prepare his defense. See Adams v. State, 707 S.W.2d
900, 903 (Tex. Crim. App. 1986). In this particular case, the indictment's omission of the name of
a complainant did not deprive Ashcraft of "notice adequate to prepare his defense." See Yanes,
149 S.W.3d at 711.

 We overrule Ashcraft's first point of error.


Evidentiary sufficiency

 In his second and third points of error, Ashcraft asserts that the evidence is legally and
factually insufficient to support his conviction for attempted sexual assault of a child.

 When there is a challenge to the legal sufficiency of the evidence to sustain a
criminal conviction, we consider whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Vodochodsky v. State, 158 S.W.3d
502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the
verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the
evidence, and drew reasonable inferences in a manner that supports the verdict. See Rollerson
v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); Shams v. State, 195 S.W.3d
346, 347 (Tex. App.--Austin 2006, pet. ref'd) (citing Griffin v. State, 614 S.W.2d 155, 159
(Tex. Crim. App. 1981)). It is not necessary that every fact point directly and independently to
the defendant's guilt, but it is enough if the conclusion is warranted by the combined and
cumulative force of all the incriminating circumstances. Hooper v. State, 214 S.W.3d 9, 13
(Tex. Crim. App. 2007). We must consider all the evidence, rightly or wrongly admitted,
that the trier of fact was permitted to consider. See Conner v. State, 67 S.W.3d 192, 197
(Tex. Crim. App. 2001).

 In a factual sufficiency review, we view the evidence in a neutral light and ask
whether a jury was rationally justified in finding guilt beyond a reasonable doubt. See Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); see also Wooley v. State, ___ S.W.3d ___,
2008 Tex. Crim. App. LEXIS 762, at *21 (Tex. Crim. App. 2008) (holding that factual sufficiency,
like legal sufficiency, should be measured "by the elements of the offense as defined by a
hypothetically correct jury charge"). We then determine whether the evidence supporting the verdict
is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against
the great weight and preponderance of the conflicting evidence. Id. at 415. "The verdict may be set
aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust." Grotti v. State, ____ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 761, at *13
(Tex. Crim. App. 2008) (citing Watson, 204 S.W.3d at 414-17). We will not reverse a case on
a factual sufficiency challenge unless we can say, with some objective basis in the record, that
the great weight and preponderance of the evidence contradicts the jury's verdict. Watson,
204 S.W.3d at 417.

 A person commits the offense of attempted sexual assault of a child if, with the
specific intent to sexually assault a child, he does an act amounting to more than mere preparation
that tends but fails to effect the commission of the intended offense. See Tex. Penal Code Ann.
§§ 15.01(a), 22.011(a)(2). Ashcraft asserts that, because "there was no actual child" involved, he
could not have committed the offense.

 A similar argument was addressed by the court of criminal appeals in Chen v. State,
42 S.W.3d 926 (Tex. Crim. App. 2001). In Chen, a 47-year-old male undercover police officer
posed online as "Julie Cirello," a 13-year-old girl. Id. at 927. The defendant solicited "Julie" for
sexual activity and arranged to meet her at an agreed-upon location. Id. at 927-28. After the
defendant arrived at the location, officers arrested him. Id. at 928. In the defendant's van, the
officers found a package of condoms and lubricant. Id. The defendant was charged and
subsequently convicted of the offense of attempted sexual performance by a child. Id.

 On appeal, Chen argued that because "Julie" did not exist, it was "legally impossible"
for him to commit the offense. Id. Therefore, according to Chen, the evidence in the record was
insufficient as a matter of law to support the verdict. Id. The court of criminal appeals disagreed:


 [W]e initially note that if Julie Cirello had been an actual thirteen year
old, then what appellant intended to accomplish (sexual performance
by a child) constituted an actual crime. Appellant's goal was to
commit the offense of sexual performance by a child. Because that
goal is a crime by law, the doctrine of legal impossibility is not
at issue in this case. Rather, this case presents a factual
impossibility scenario. Due to a factual condition unknown to
appellant (that Julie Cirello did not actually exist), the offense of
sexual performance by a child could not be completed. It is true that,
as appellant claims, the actual offense of sexual performance by a
child would have been impossible for appellant to complete; the
complainant, Julie Cirello, did not physically exist. But completion
of the crime was apparently possible to appellant. He had specific
intent to commit the offense of sexual performance by a child, and he
committed an act amounting to more than mere preparation that
tended but failed to effect the commission of the offense. The State
presented evidence for each of the necessary elements of attempted
sexual performance by a child.


Id. at 930.

 Similarly, in this case, because there was no actual child, the offense of sexual assault
of a child could not have been completed. However, because Ashcraft was charged with attempted
sexual assault of a child, the State needed only to prove beyond a reasonable doubt that Ashcraft
had the specific intent to commit the offense of sexual assault of a child, and that he committed
an act amounting to more than mere preparation that tended but failed to effect the commission
of the offense. See id.; see also Smith v. State, No. 03-05-00399-CR, 2006 Tex. App. LEXIS 2062,
at *15-16 (Tex. App.--Austin Mar. 16, 2006, pet. ref'd) (mem. op., not designated for publication)
(following Chen).

 In this case, the State produced transcripts of numerous online conversations that
Ashcraft had with "haileyhayes14," a person whom Ashcraft believed was a 14-year-old girl. These
conversations were undisputedly of a sexual nature and were very explicit. Agent McKay confirmed
in her testimony that Ashcraft initiated all of these conversations. Also admitted into evidence were
webcam photographs that Ashcraft sent to "haileyhayes14" that show his sexual organs. From the
content of these conversations and photographs, the jury could reasonably infer that Ashcraft had the
specific intent to engage in sexual intercourse with the child whom he believed to be
"haileyhayes14." On the day he had arranged to meet "haileyhayes14," Ashcraft initiated a final chat
session immediately prior to departing for Buda. During the conversation, Ashcraft made several
statements that the jury could infer were evidence of Ashcraft's intent to commit the offense,
including "so what will you be wearing," "ok ill ask you one more time are you really sure . . . i am,"
and "dont change your mind while im on the road . . . my dick is alrady hard so can you
fix that [sic]."

 After completing the conversation, Ashcraft traveled to the arranged meeting place
at the appointed time. The jury could reasonably infer that this act was further evidence of
Ashcraft's intent. See Hall v. State, 124 S.W.3d 246, 252 (Tex. App.--San Antonio 2003,
pet. ref'd); see also Smith, 2006 Tex. App. LEXIS 2062, at *16 ("The specific act of driving to the
agreed-upon meeting place is corroborative action. Such conduct goes beyond remote preparatory
activity and confirms a criminal design."). The jury also heard evidence that, once Ashcraft arrived
at the location, he "appeared to be driving very slow as if he was looking for someone inside." 
Agent Bloodworth, who was posing as "haileyhayes14" inside the restaurant, testified that she waved
to Ashcraft and that she thought she saw him wave back. From this evidence, the jury could have
inferred that Ashcraft was still intending to meet up with "haileyhayes14" once he arrived at the
restaurant. Furthermore, in Ashcraft's vehicle, officers found items including a digital camera, a
stuffed animal, and a coupon guide for hotel / motel discounts. When considering these items in the
context of the other evidence in the case, including Ashcraft's statement in his final chat session that
he was going to bring a camera, the jury could reasonably infer that these items were additional
evidence that Ashcraft drove to Buda with the specific intent to engage in sexual intercourse with
someone whom he believed to be a 14-year-old child.

 When viewing the above evidence in the light most favorable to the verdict, we
conclude that the State proved beyond a reasonable doubt that Ashcraft had the specific intent to
commit the offense of sexual assault of a child, and that he committed an act amounting to more than
mere preparation that tended but failed to effect the commission of the offense.

 We reach the same conclusion when considering the evidence in a neutral light. 
During trial, Ashcraft emphasized that there were no condoms or women's clothing found inside his
vehicle at the time of his arrest. Also, in a videotaped statement to police officers after he was
arrested, Ashcraft denied that he intended to have sex and claimed that he had traveled to Buda
merely to inform "haileyhayes14" that he was not going to do anything with her. However, the jury
was entitled to disbelieve Ashcraft's statement, and the lack of condoms and women's clothing in
Ashcraft's vehicle is not necessarily evidence that he did not intend to have sex. We cannot say,
with some objective basis in the record, that the great weight and preponderance of the evidence
contradicts the jury's verdict.

 We overrule Ashcraft's second and third points of error.


Venue

 In his fourth, fifth, sixth, and seventh points of error, Ashcraft claims that the
evidence is legally and factually insufficient to support his convictions for criminal solicitation of
a minor "because none of the elements of the offense occurred in Hays County." Although Ashcraft
frames these points of error as a challenge to the sufficiency of the evidence, it is clear from the
arguments in Ashcraft's brief that he is actually challenging venue.

 This Court has previously held that "venue is not a constituent element of the offense
charged, and the failure to prove venue does not negate the guilt of the accused." Schemm v. State,
228 S.W.3d 844, 845 (Tex. App.--Austin 2007, pet. ref'd) (citing State v. Blankenship, 170 S.W.3d
676, 681 (Tex. App.--Austin 2005, pet. ref'd)). Furthermore, venue need only be proved by a
preponderance of the evidence. Id. (citing Tex. Code Crim. Proc. Ann. art. 13.17 (West 2005)). 
Venue can be established by either direct or circumstantial evidence. Hall, 124 S.W.3d at 250
(citing Black v. State, 645 S.W.2d 789, 790 (Tex. Crim. App. 1983)). For purposes of the offense
of criminal solicitation of a minor, the proper county for prosecution is the county in which the
offense occurred. Id. (citing Tex. Code Crim. Proc. Ann. art. 13.18 (West 2005)). When conduct
constituting a single offense is committed in more than one county, venue is proper in any of those
counties. Schemm, 228 S.W.3d at 846 (citing State v. Weaver, 982 S.W.2d 892, 893
(Tex. Crim. App. 1998) & Wood v. State, 573 S.W.2d 207, 210 (Tex. Crim. App. 1978)).

 As applied to the facts of this case, the offense of criminal solicitation of a minor
occurs when a person, with the intent that sexual assault or sexual performance be committed,
requests, commands, or attempts to induce a minor to engage in specific conduct, that under the
circumstances surrounding the actor's conduct as the actor believes them to be, would make the
minor a party to the commission of sexual assault or sexual performance. See Tex. Penal Code Ann.
§ 15.031. This offense can occur in more than one county--the county where the solicitation
occurred and the county where the person arranged to meet the minor to commit the underlying
offense. See Hall, 124 S.W.3d at 251. Therefore, venue would be proper in either county. Id.

 Here, the evidence showed that Ashcraft's online solicitations occurred at his
residence in Harris County, while Ashcraft was arrested in Hays County at the location where he
had arranged to meet the minor. Therefore, although the case could have been brought in
Harris County, venue was also proper in Hays County. See id.; see also Schemm, 228 S.W.3d at 846
(in case involving prosecution for attempted sexual performance by a child, holding that venue was
proper in Hays County even though online communications occurred in Williamson County because
part of appellant's conduct involved driving to Hays County to meet with minor).

 We overrule Ashcraft's fourth, fifth, sixth, and seventh points of error.


Improper jury argument

 In his eighth point of error, Ashcraft asserts that the district court "erred" in denying

his motion for mistrial during the punishment phase of the trial when, according to Ashcraft, the
prosecutor engaged in improper jury argument.

 A trial court's denial of a motion for mistrial is reviewed under an abuse of
discretion standard. Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). In other words,
"an appellate court must uphold the trial court's ruling if it was within the zone of reasonable
disagreement." Id. (citing Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003)). 
"Mistrial is appropriate for only 'highly prejudicial and incurable errors.'" Simpson, 119 S.W.3d at
272 (quoting Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). "It may be used to end
trial proceedings when faced with error so prejudicial that 'expenditure of further time and
expense would be wasteful and futile.'" Id. "Only in extreme circumstances, where the
prejudice is incurable, will a mistrial be required." Hawkins v. State, 135 S.W.3d 72, 77
(Tex. Crim. App. 2004)

 Ashcraft takes issue with the following argument made by the prosecutor during her
closing argument:


 Another limitation [of probation] is that, you know, for the ultimate
success on these type[s] of cases, the person is going to have to want
to be helped. You saw Mr. Ashcraft on the videotape of his--when
he was giving his statement. You can see on there for yourself or
you saw on there for yourself there was no remorse. There was no
crying, as the Defense would have you believe in trying to recreate
what you saw. There was no crying, there was no remorse. This
man, Phillip Ashcraft, does not think--to this day does not think he
did anything wrong.


Ashcraft's counsel objected, arguing that the prosecutor had just made a "statement on the silence
of the defendant." The district court sustained the objection and instructed the jury to disregard. 
Ashcraft then requested a mistrial, which the district court denied. On appeal, Ashcraft contends that
the district court should have granted a mistrial because the prosecutor's argument amounted to a
comment on Ashcraft's "failure to testify."

 "A comment by the prosecutor on a defendant's failure to show remorse can
sometimes be a comment on his failure to testify. However, when such prosecutorial comments are
supported by testimony presented to the jury during the trial, they are considered a proper summation
of the evidence." Garcia v. State, 126 S.W.3d 921 In her argument, the prosecutor was referring
to Ashcraft's videotaped statement to the police after Ashcraft was arrested. The videotape was
admitted into evidence and played for the jury. During the cross-examination of Agent McKay,
defense counsel asked the following questions about the videotape:


 Q: At the time that--well, looking at that videotape that's been
played now of the statement by Mr. Ashcraft, it appeared that
he was crying in parts of it; do you recall that?

 

 A: In the video today?

 

 Q: Yes.

 

 A: No, sir.

 

 Q: Okay. Did you--how many times have you watched the
video or have you watched it since it was made?

 

 A: I watched it briefly earlier when you watched it, and I just
listened to it and read the transcript.

 

 Q: Okay. Now, it wouldn't be in the transcript that somebody
was crying, correct?

 

 A: No, but if that was his demeanor at the time and he was in
that state and crying, I'm probably sure I would have noted it
in my report.


On redirect, the prosecutor asked the following related question:


 Q: Agent McKay, you heard--you were asked questions about
Mr. Ashcraft crying in the witness room at the Sheriff's
Office, and unlike everybody else here in the courtroom, you
were there. So what is your recollection about that?

 

 A: During the time Mr. Ashcraft was not crying, he was pretty
relaxed, it was in a comfortable environment and we
exchanged laughs periodically during the interview.


 Viewed in the context of the above evidence, the prosecutor's argument appears to
be nothing more than a summation of the evidence ("There was no crying, as the Defense would
have you believe in trying to recreate what you saw.") or a reasonable deduction drawn from the
evidence ("You can see on there for yourself or you saw on there for yourself there was
no remorse."). Such argument is permissible. See Jackson v. State, 17 S.W.3d 664, 673
(Tex. Crim. App. 2000) (observing that proper jury argument includes "summation of the evidence
presented at trial" and "reasonable deductions drawn from that evidence").

 However, even were we to assume that the prosecutor's argument could be
construed as an improper comment on Ashcraft's failure to testify, the district court instructed the
jury to disregard. Therefore, a mistrial would be required only if the comment was
"highly prejudicial and incurable." Simpson, 119 S.W.3d at 272; see also Moore v. State,
999 S.W.2d 385, 405 (Tex. Crim. App. 1999) (stating that instruction to disregard will not cure
comment on failure to testify only in "the most blatant examples."). On this record, we cannot
conclude that the district court abused its discretion in finding that the prosecutor's comment did not
rise to that level.

 In Wead v. State, the court of criminal appeals explained,


 It is well settled that a prosecutor's comment amounts to a comment
on a defendant's failure to testify only if the prosecutor manifestly
intends the comment to be, or the comment is of such character that
a typical jury would naturally and necessarily take it to be, a comment
on the defendant's failure to testify. It is not sufficient that the
comment might be construed as an implied or indirect allusion to the
defendant's failure to testify.


129 S.W.3d 126, 130 (Tex. Crim. App. 2004) (internal citations omitted). There is nothing in the
record to suggest that the prosecutor manifestly intended her comment to be, or the comment is of
such character that a typical jury would naturally and necessarily take it to be, a comment on
Ashcraft's failure to testify. In fact, immediately after the district court denied the motion for
mistrial, the prosecutor clarified her argument:


 Again, in the Charge that the judge gives you it says in here,
and we've said it before, that the fact he did not testify in this trial
cannot be held against him at all for any purpose whatsoever. 
Looking at the videotape, you can see in the videotape the lack of
remorse that he shows.


(Emphasis added). It is clear from the record that the prosecutor was referring to the evidence
presented during trial, not to Ashcraft's failure to testify.

 We overrule Ashcraft's eighth point of error.


CONCLUSION

 Having overruled Ashcraft's points of error, we affirm the judgments of the
district court.


 ____________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: July 31, 2008

Do Not Publish