# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00310-CR
## NO. 03-06-00311-CR

**Phillip Ashcraft, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NOS. CR-04-252 & CR-04-253, HONORABLE WILLIAM R. HENRY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In two cases consolidated for trial, a jury convicted Phillip Ashcraft of the offenses of attempted sexual assault of a child, attempted sexual performance by a child, and two counts of criminal solicitation of a minor.  *See* Tex. Penal Code Ann. § 15.01 (attempt) (West 2003), §§ 15.031 (criminal solicitation of a minor), 22.011(a)(2) (sexual assault of a child), 43.25 (sexual performance by a child) (West Supp. 2007).  The jury assessed punishment at eight and ten years' imprisonment for the two counts of criminal solicitation of a minor, ten years' imprisonment for attempted sexual assault of a child, and ten years' imprisonment for attempted sexual performance by a child.  In eight points of error, Ashcraft claims that the indictment for attempted sexual assault should have been quashed, challenges the legal and factual sufficiency of the evidence supporting his conviction for attempted sexual assault of a child, asserts that venue in Hays County

was improper, and contends that the prosecutor engaged in improper jury argument during sentencing. We will affirm the judgments.

## BACKGROUND

This appeal involves what the Cyber Crimes Division of the Attorney General's Office refers to as a "criminal solicitation traveler case." According to FBI special agent Karen McKay, a former agent with the Cyber Crimes Division and the State's key witness in this case, "A traveler case is criminal solicitation where someone solicits a minor online to travel to meet them to engage in sexual intercourse."

The underlying facts are not in dispute. The jury heard evidence that in 2004, Agent McKay was posing online as "haileyhayes14," a fourteen-year-old girl. While in a chat room entitled, "I Like Older Men Best," McKay was contacted by an individual with the screen names "thebigboner36" and "milfhunt66." The evidence showed that these screen names belonged to Ashcraft. McKay testified that between February 2 and February 18, 2004, Ashcraft made numerous online sexual solicitations to "haileyhayes14." The text of these online conversations were admitted into evidence. McKay further testified that Ashcraft ultimately arranged to meet her at a restaurant in Buda. According to McKay, Ashcraft informed her that he would be driving a green Ford pickup truck.

On the morning of February 18, 2004, the day that Ashcraft had arranged to meet with "haileyhayes14," immediately prior to departing for Buda, Ashcraft initiated a final chat session with McKay. Because this conversation is relevant to our sufficiency analysis, we reproduce it below:

2

| | |
|---|---|
| thebigboner36: | hey |
| haileyhayes14: | hey |
| haileyhayes14: | whtcha doin |
| thebigboner36: | getting dressed u |
| haileyhayes14: | kewl u still gone come |
| thebigboner36: | you sure |
| haileyhayes14: | yea u |
| thebigboner36: | just a little nervous that you might be a cop or a guy |
| haileyhayes14: | ur a cop???? u said u werent |
| thebigboner36: | no u might be |
| haileyhayes14: | no im not |
| thebigboner36: | i dont want to go to jail |
| haileyhayes14: | i dont either |
| thebigboner36: | ok |
| haileyhayes14: | mom wuld kill me |
| thebigboner36: | so what will you be wearing |
| haileyhayes14: | ummm dont get mad but ima wear a pink shirt an jeans and sandals ima bring a skirt thouh and change cuz its cold k? |
| thebigboner36: | ok its a little cold |
| haileyhayes14: | yea |
| haileyhayes14: | u not mad r u |
| thebigboner36: | no you dont have to bring it |

3

| | |
|---|---|
| haileyhayes14: | u sure |
| thebigboner36: | yep |
| haileyhayes14: | k |
| thebigboner36: | are you really sure you want to do this because its a long drive for me for nothing |
| haileyhayes14: | im sure r u |
| thebigboner36: | only if you are |
| haileyhayes14: | i am |
| haileyhayes14: | how far is it |
| thebigboner36: | 2-3 hours |
| haileyhayes14: | wow ok |
| thebigboner36: | so what if I get there and you change your mind or dont like me |
| haileyhayes14: | i wont k |
| thebigboner36: | ok if you say so |
| haileyhayes14: | i wont |
| thebigboner36: | and you better be the girl in the pic u sent me |
| haileyhayes14: | u better be u i am silly |
| thebigboner36: | you have seen me |
| haileyhayes14: | i know |
| thebigboner36: | for real |
| thebigboner36: | i haven't seen you |
| haileyhayes14: | u have |

| | |
|---|---|
| thebigboner36: | not for real |
| thebigboner36: | be up there at 11 no sooner |
| haileyhayes14: | k |
| thebigboner36: | ill be looking for you |
| haileyhayes14: | k |
| haileyhayes14: | wht u wearin |
| thebigboner36: | ill honk or pick u up |
| thebigboner36: | its safer for me that way just incase |
| haileyhayes14: | k |
| thebigboner36: | your wearing pink top |
| haileyhayes14: | yep |
| thebigboner36: | ok ill look or honk |
| haileyhayes14: | k |
| haileyhayes14: | where u gone b |
| thebigboner36: | were meeting at the jack-n-the box |
| thebigboner36: | or if i see you walking |
| haileyhayes14: | k |
| thebigboner36: | toes painted |
| haileyhayes14: | yep red |
| thebigboner36: | ok ill ask you one more time |
| thebigboner36: | are you really sure |
| thebigboner36: | i am |
| haileyhayes14: | yea i am |
| thebigboner36: | ok you promise |
| haileyhayes14: | yep pinky swear do u |

thebigboner36:      and youll keep it between us

haileyhayes14:      yep will u

thebigboner36:      if you say anything to anyone even your friends i will go to jail not you

haileyhayes14:      i wont tell no one k
haileyhayes14:      u gone tell or show anyone the pics u take

thebigboner36:      nope

haileyhayes14:      promise

thebigboner36:      promise
thebigboner36:      i said that

haileyhayes14:      k
haileyhayes14:      u gone bring
haileyhayes14:      the cam and other stuff

thebigboner36:      im leaving now be up there at 11 ill be there around 11:30
thebigboner36:      yes
thebigboner36:      ill bring it

haileyhayes14:      k

thebigboner36:      see you later

haileyhayes14:      k

thebigboner36:      are you scared

haileyhayes14:      ummm a lil but ur kewl

thebigboner36:      dont change your mind while im on the road
thebigboner36:      my dick is alrady hard so can you fix that

haileyhayes14:      yep

| | |
|---|---|
| haileyhayes14: | hehehehe |
| haileyhayes14: | c yah soon |
| thebigboner36: | ok bye |
| haileyhayes14: | bye ill go get my stuff ready k |
| thebigboner36: | what stuff you bringing |
| haileyhayes14: | no get my clothes ready silly and bath |
| thebigboner36: | ok bye |
| haileyhayes14: | bye |

At approximately 11:25 a.m., Ashcraft pulled into the parking lot of the Buda Jack-in-the-Box driving a green Ford Ranger pickup truck. Several police officers were at the restaurant waiting for him, including Agent McKay and Sergeant Jennifer Bloodworth, also with the Attorney General's Cyber Crimes Division. Sergeant Bloodworth's job was to be inside the restaurant and pose as "haileyhayes14." When Ashcraft pulled into the parking lot, Bloodworth observed that he "appeared to be driving very slow as if he was looking for someone inside." Bloodworth testified, "As he pulled around I kind of looked over my shoulders and just kind of gave him a wave to verify that I was who he was looking for, which was Hailey Hayes, the 14-year-old female. At that point he pulled around and parked." Bloodworth added, "I did observe him kind of wave over the steering wheel." Once Ashcraft parked, the other officers approached his vehicle and immediately arrested him. Upon searching Ashcraft's vehicle, officers found a digital camera, a stuffed animal, and a book entitled, "Travel Coupon Guide Motel/Hotel Discounts."

7

In two indictments, Ashcraft was charged with multiple sexual offenses. In cause number CR-04-252, Ashcraft was charged with attempted sexual assault of a child. In cause number CR-04-253, Ashcraft was charged with attempted sexual performance by a child and two counts of criminal solicitation of a minor. The causes were consolidated for trial. The jury found Ashcraft guilty of the offenses as charged in the indictments. This appeal followed.

## ANALYSIS

### Motion to quash

In his first point of error, Ashcraft asserts that the district court erred in denying his motion to quash the indictment for attempted sexual assault of a child. Specifically, Ashcraft argues that, because the indictment did not allege the name of the complainant, it failed to give him "precise notice of the offense of which he is being accused."

When reviewing a trial court's decision to deny a motion to quash an indictment, we apply a de novo standard of review. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007) (citing *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004)). The right to notice is set forth in both the United States and Texas Constitutions. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10. Thus, the charging instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense. *Moff*, 154 S.W.3d at 601. Generally, an indictment that tracks the language of a criminal statute is sufficient to allege an offense and to provide a defendant with notice of the charged offense. *State v. Edmond*, 933 S.W.2d 120, 127-28 (Tex. Crim. App. 1996); *see also DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988).

8

Upon the filing of a timely motion to quash, the indictment must be analyzed to determine whether it states on its face the facts necessary to allege that an offense was committed, to bar a subsequent prosecution for the same offense, and to give the accused notice of the precise offense with which he is charged. *DeVaughn*, 749 S.W.2d at 67; *Rotenberry v. State*, 245 S.W.3d 583, 586 (Tex. App.—Fort Worth 2007, pet. ref'd). A motion to quash should be granted only where the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed. *Yanes v. State*, 149 S.W.3d 708, 709 (Tex. App.—Austin 2004, pet. ref'd).

In this case, the indictment at issue stated the following:

> On or about February 18, 2004, in Hays County, Texas, Phillip Ashcraft a/k/a "thebigboner36" and "milfhunt66" did then and there, with the specific intent to commit the offense of Sexual Assault of a Child, did an act, to-wit: used Internet communications to set up a meeting with someone he believed to be a child and intentionally and knowingly traveled to meet said person for the purpose of engaging in sexual intercourse, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

This indictment tracks the language of the criminal attempt statute. *See* Tex. Penal Code Ann. § 15.01 ("A person commits the offense of criminal attempt if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."). Additionally, the indictment states specific details about when, where, and how Ashcraft allegedly committed the offense. Although the indictment does not name a complainant, because the State alleged an offense that "centers on the mental state and actions of the perpetrator, and not on the harm done to the victim," the State was not required

9

to name a complainant. *See Yanes*, 149 S.W.3d at 711; s*ee also Cody v. State*, 605 S.W.2d 271, 274 (Tex. Crim. App. 1980) ("An indictment for criminal attempt is not fundamentally defective for failure to allege the constituent elements of the offense intended."); *In re J.B.M.*, 157 S.W.3d 823, 825 (Tex. App.—Fort Worth 2005, no pet.) (in case involving prosecution for attempted sexual assault, holding that "when a defendant is charged under the criminal attempt statute, the State is only required to plead the elements of a criminal attempt offense, and need not allege the constituent elements of the underlying offense."). We find that the indictment in this particular case "states on its face the facts necessary to allege that an offense was committed, to bar a subsequent prosecution for the same offense, and to give the accused notice of the precise offense with which he is charged." *See Rottenberry*, 245 S.W.3d at 586.

Furthermore, even were we to find that the indictment provided Ashcraft with insufficient notice, such error would be reversible only if, in the context of the case, this lack of notice had an impact on Ashcraft's ability to prepare his defense. *See Adams v. State*, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986). In this particular case, the indictment's omission of the name of a complainant did not deprive Ashcraft of "notice adequate to prepare his defense." *See Yanes*, 149 S.W.3d at 711.

We overrule Ashcraft's first point of error.

**Evidentiary sufficiency**

In his second and third points of error, Ashcraft asserts that the evidence is legally and factually insufficient to support his conviction for attempted sexual assault of a child.

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); *Shams v. State*, 195 S.W.3d 346, 347 (Tex. App.—Austin 2006, pet. ref'd) (citing *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)). It is not necessary that every fact point directly and independently to the defendant's guilt, but it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We must consider all the evidence, rightly or wrongly admitted, that the trier of fact was permitted to consider. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *see also Wooley v. State*, ___ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 762, at *21 (Tex. Crim. App. 2008) (holding that factual sufficiency, like legal sufficiency, should be measured "by the elements of the offense as defined by a hypothetically correct jury charge"). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against

11

the great weight and preponderance of the conflicting evidence. *Id*. at 415. "The verdict may be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Grotti v. State*, ____ S.W.3d ___, 2008 Tex. Crim. App. LEXIS 761, at *13 (Tex. Crim. App. 2008) (citing *Watson*, 204 S.W.3d at 414-17). We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417.

A person commits the offense of attempted sexual assault of a child if, with the specific intent to sexually assault a child, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the intended offense. *See* Tex. Penal Code Ann. §§ 15.01(a), 22.011(a)(2). Ashcraft asserts that, because "there was no actual child" involved, he could not have committed the offense.

A similar argument was addressed by the court of criminal appeals in *Chen v. State*, 42 S.W.3d 926 (Tex. Crim. App. 2001). In *Chen*, a 47-year-old male undercover police officer posed online as "Julie Cirello," a 13-year-old girl. *Id*. at 927. The defendant solicited "Julie" for sexual activity and arranged to meet her at an agreed-upon location. *Id*. at 927-28. After the defendant arrived at the location, officers arrested him. *Id*. at 928. In the defendant's van, the officers found a package of condoms and lubricant. *Id*. The defendant was charged and subsequently convicted of the offense of attempted sexual performance by a child. *Id*.

12

On appeal, Chen argued that because "Julie" did not exist, it was "legally impossible" for him to commit the offense. *Id*. Therefore, according to Chen, the evidence in the record was insufficient as a matter of law to support the verdict. *Id*. The court of criminal appeals disagreed:

> [W]e initially note that if Julie Cirello had been an actual thirteen year old, then what appellant intended to accomplish (sexual performance by a child) constituted an actual crime. Appellant's goal was to commit the offense of sexual performance by a child. Because that goal is a crime by law, the doctrine of legal impossibility is not at issue in this case. Rather, this case presents a factual impossibility scenario. Due to a factual condition unknown to appellant (that Julie Cirello did not actually exist), the offense of sexual performance by a child could not be completed. It is true that, as appellant claims, the actual offense of sexual performance by a child would have been impossible for appellant to complete; the complainant, Julie Cirello, did not physically exist. But completion of the crime was apparently possible to appellant. He had specific intent to commit the offense of sexual performance by a child, and he committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense. The State presented evidence for each of the necessary elements of attempted sexual performance by a child.

*Id*. at 930.

Similarly, in this case, because there was no actual child, the offense of sexual assault of a child could not have been completed. However, because Ashcraft was charged with *attempted* sexual assault of a child, the State needed only to prove beyond a reasonable doubt that Ashcraft had the specific intent to commit the offense of sexual assault of a child, and that he committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense. *See id*.; *see also Smith v. State*, No. 03-05-00399-CR, 2006 Tex. App. LEXIS 2062,

13

at *15-16 (Tex. App.—Austin Mar. 16, 2006, pet. ref'd) (mem. op., not designated for publication) (following *Chen*).

In this case, the State produced transcripts of numerous online conversations that Ashcraft had with "haileyhayes14," a person whom Ashcraft believed was a 14-year-old girl. These conversations were undisputedly of a sexual nature and were very explicit. Agent McKay confirmed in her testimony that Ashcraft initiated all of these conversations. Also admitted into evidence were webcam photographs that Ashcraft sent to "haileyhayes14" that show his sexual organs. From the content of these conversations and photographs, the jury could reasonably infer that Ashcraft had the specific intent to engage in sexual intercourse with the child whom he believed to be "haileyhayes14." On the day he had arranged to meet "haileyhayes14," Ashcraft initiated a final chat session immediately prior to departing for Buda. During the conversation, Ashcraft made several statements that the jury could infer were evidence of Ashcraft's intent to commit the offense, including "so what will you be wearing," "ok ill ask you one more time are you really sure . . . i am," and "dont change your mind while im on the road . . . my dick is alrady hard so can you fix that [sic]."

After completing the conversation, Ashcraft traveled to the arranged meeting place at the appointed time. The jury could reasonably infer that this act was further evidence of Ashcraft's intent. *See Hall v. State*, 124 S.W.3d 246, 252 (Tex. App.—San Antonio 2003, pet. ref'd); *see also Smith*, 2006 Tex. App. LEXIS 2062, at *16 ("The specific act of driving to the agreed-upon meeting place is corroborative action. Such conduct goes beyond remote preparatory activity and confirms a criminal design."). The jury also heard evidence that, once Ashcraft arrived

14

at the location, he "appeared to be driving very slow as if he was looking for someone inside." Agent Bloodworth, who was posing as "haileyhayes14" inside the restaurant, testified that she waved to Ashcraft and that she thought she saw him wave back. From this evidence, the jury could have inferred that Ashcraft was still intending to meet up with "haileyhayes14" once he arrived at the restaurant. Furthermore, in Ashcraft's vehicle, officers found items including a digital camera, a stuffed animal, and a coupon guide for hotel / motel discounts. When considering these items in the context of the other evidence in the case, including Ashcraft's statement in his final chat session that he was going to bring a camera, the jury could reasonably infer that these items were additional evidence that Ashcraft drove to Buda with the specific intent to engage in sexual intercourse with someone whom he believed to be a 14-year-old child.

When viewing the above evidence in the light most favorable to the verdict, we conclude that the State proved beyond a reasonable doubt that Ashcraft had the specific intent to commit the offense of sexual assault of a child, and that he committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense.

We reach the same conclusion when considering the evidence in a neutral light. During trial, Ashcraft emphasized that there were no condoms or women's clothing found inside his vehicle at the time of his arrest. Also, in a videotaped statement to police officers after he was arrested, Ashcraft denied that he intended to have sex and claimed that he had traveled to Buda merely to inform "haileyhayes14" that he was not going to do anything with her. However, the jury was entitled to disbelieve Ashcraft's statement, and the lack of condoms and women's clothing in Ashcraft's vehicle is not necessarily evidence that he did not intend to have sex. We cannot say,

15

with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict.

We overrule Ashcraft's second and third points of error.

**Venue**

In his fourth, fifth, sixth, and seventh points of error, Ashcraft claims that the evidence is legally and factually insufficient to support his convictions for criminal solicitation of a minor "because none of the elements of the offense occurred in Hays County." Although Ashcraft frames these points of error as a challenge to the sufficiency of the evidence, it is clear from the arguments in Ashcraft's brief that he is actually challenging venue.

This Court has previously held that "venue is not a constituent element of the offense charged, and the failure to prove venue does not negate the guilt of the accused." *Schemm v. State*, 228 S.W.3d 844, 845 (Tex. App.—Austin 2007, pet. ref'd) (citing *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.—Austin 2005, pet. ref'd)). Furthermore, venue need only be proved by a preponderance of the evidence. *Id*. (citing Tex. Code Crim. Proc. Ann. art. 13.17 (West 2005)). Venue can be established by either direct or circumstantial evidence. *Hall*, 124 S.W.3d at 250 (citing *Black v. State*, 645 S.W.2d 789, 790 (Tex. Crim. App. 1983)). For purposes of the offense of criminal solicitation of a minor, the proper county for prosecution is the county in which the offense occurred. *Id*. (citing Tex. Code Crim. Proc. Ann. art. 13.18 (West 2005)). When conduct constituting a single offense is committed in more than one county, venue is proper in any of those counties. *Schemm*, 228 S.W.3d at 846 (citing *State v. Weaver*, 982 S.W.2d 892, 893 (Tex. Crim. App. 1998) & *Wood v. State*, 573 S.W.2d 207, 210 (Tex. Crim. App. 1978)).

16

As applied to the facts of this case, the offense of criminal solicitation of a minor occurs when a person, with the intent that sexual assault or sexual performance be committed, requests, commands, or attempts to induce a minor to engage in specific conduct, that under the circumstances surrounding the actor's conduct as the actor believes them to be, would make the minor a party to the commission of sexual assault or sexual performance. *See* Tex. Penal Code Ann. § 15.031. This offense can occur in more than one county—the county where the solicitation occurred and the county where the person arranged to meet the minor to commit the underlying offense. *See Hall*, 124 S.W.3d at 251. Therefore, venue would be proper in either county. *Id.*

Here, the evidence showed that Ashcraft's online solicitations occurred at his residence in Harris County, while Ashcraft was arrested in Hays County at the location where he had arranged to meet the minor. Therefore, although the case could have been brought in Harris County, venue was also proper in Hays County. *See id.*; *see also Schemm*, 228 S.W.3d at 846 (in case involving prosecution for attempted sexual performance by a child, holding that venue was proper in Hays County even though online communications occurred in Williamson County because part of appellant's conduct involved driving to Hays County to meet with minor).

We overrule Ashcraft's fourth, fifth, sixth, and seventh points of error.

**Improper jury argument**

In his eighth point of error, Ashcraft asserts that the district court "erred" in denying his motion for mistrial during the punishment phase of the trial when, according to Ashcraft, the prosecutor engaged in improper jury argument.

17

A trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). In other words, "an appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Id*. (citing *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003)). "Mistrial is appropriate for only 'highly prejudicial and incurable errors.'" *Simpson*, 119 S.W.3d at 272 (quoting *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)). "It may be used to end trial proceedings when faced with error so prejudicial that 'expenditure of further time and expense would be wasteful and futile.'" *Id*. "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)

Ashcraft takes issue with the following argument made by the prosecutor during her closing argument:

> Another limitation [of probation] is that, you know, for the ultimate success on these type[s] of cases, the person is going to have to want to be helped. You saw Mr. Ashcraft on the videotape of his—when he was giving his statement. You can see on there for yourself or you saw on there for yourself there was no remorse. There was no crying, as the Defense would have you believe in trying to recreate what you saw. There was no crying, there was no remorse. This man, Phillip Ashcraft, does not think—to this day does not think he did anything wrong.

Ashcraft's counsel objected, arguing that the prosecutor had just made a "statement on the silence of the defendant." The district court sustained the objection and instructed the jury to disregard. Ashcraft then requested a mistrial, which the district court denied. On appeal, Ashcraft contends that

the district court should have granted a mistrial because the prosecutor's argument amounted to a comment on Ashcraft's "failure to testify."

"A comment by the prosecutor on a defendant's failure to show remorse can sometimes be a comment on his failure to testify. However, when such prosecutorial comments are supported by testimony presented to the jury during the trial, they are considered a proper summation of the evidence." *Garcia v. State*, 126 S.W.3d 921  In her argument, the prosecutor was referring to Ashcraft's videotaped statement to the police after Ashcraft was arrested. The videotape was admitted into evidence and played for the jury. During the cross-examination of Agent McKay, defense counsel asked the following questions about the videotape:

> Q:    At the time that—well, looking at that videotape that's been
>       played now of the statement by Mr. Ashcraft, it appeared that
>       he was crying in parts of it; do you recall that?
>
> A:    In the video today?
>
> Q:    Yes.
>
> A:    No, sir.
>
> Q:    Okay. Did you—how many times have you watched the
>       video or have you watched it since it was made?
>
> A:    I watched it briefly earlier when you watched it, and I just
>       listened to it and read the transcript.
>
> Q:    Okay. Now, it wouldn't be in the transcript that somebody
>       was crying, correct?
>
> A:    No, but if that was his demeanor at the time and he was in
>       that state and crying, I'm probably sure I would have noted it
>       in my report.

19

On redirect, the prosecutor asked the following related question:

> Q: Agent McKay, you heard—you were asked questions about Mr. Ashcraft crying in the witness room at the Sheriff's Office, and unlike everybody else here in the courtroom, you were there. So what is your recollection about that?
>
> A: During the time Mr. Ashcraft was not crying, he was pretty relaxed, it was in a comfortable environment and we exchanged laughs periodically during the interview.

Viewed in the context of the above evidence, the prosecutor's argument appears to be nothing more than a summation of the evidence ("There was no crying, as the Defense would have you believe in trying to recreate what you saw.") or a reasonable deduction drawn from the evidence ("You can see on there for yourself or you saw on there for yourself there was no remorse."). Such argument is permissible. *See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000) (observing that proper jury argument includes "summation of the evidence presented at trial" and "reasonable deductions drawn from that evidence").

However, even were we to assume that the prosecutor's argument could be construed as an improper comment on Ashcraft's failure to testify, the district court instructed the jury to disregard. Therefore, a mistrial would be required only if the comment was "highly prejudicial and incurable." *Simpson*, 119 S.W.3d at 272; *see also Moore v. State*, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999) (stating that instruction to disregard will not cure comment on failure to testify only in "the most blatant examples."). On this record, we cannot conclude that the district court abused its discretion in finding that the prosecutor's comment did not rise to that level.

20

In *Wead v. State*, the court of criminal appeals explained,

> It is well settled that a prosecutor's comment amounts to a comment on a defendant's failure to testify only if the prosecutor manifestly intends the comment to be, or the comment is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. It is not sufficient that the comment might be construed as an implied or indirect allusion to the defendant's failure to testify.

129 S.W.3d 126, 130 (Tex. Crim. App. 2004) (internal citations omitted). There is nothing in the record to suggest that the prosecutor manifestly intended her comment to be, or the comment is of such character that a typical jury would naturally and necessarily take it to be, a comment on Ashcraft's failure to testify. In fact, immediately after the district court denied the motion for mistrial, the prosecutor clarified her argument:

> Again, in the Charge that the judge gives you it says in here, and we've said it before, that the fact he did not testify in this trial cannot be held against him at all for any purpose whatsoever. *Looking at the videotape*, *you can see in the videotape* the lack of remorse that he shows.

(Emphasis added). It is clear from the record that the prosecutor was referring to the evidence presented during trial, not to Ashcraft's failure to testify.

We overrule Ashcraft's eighth point of error.

## CONCLUSION

Having overruled Ashcraft's points of error, we affirm the judgments of the district court.

21

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed:   July 31, 2008

Do Not Publish