

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-10-00264-CR

GARY D. TAYLOR                                                                          APPELLANT

V.

THE STATE OF TEXAS                                                                          STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two points, Appellant Gary D. Taylor claims that the evidence adduced at trial was legally and factually insufficient to support his convictions for attempted arson and stalking. In a third, he claims that he received ineffective assistance of counsel. We hold that the evidence was sufficient to sustain the convictions and that his trial counsel rendered reasonably effective assistance. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

# BACKGROUND

The complainant, Gala Tenay Abdul-Aleem, testified at trial that she and Taylor met in the fall of 2008 at a gas station in Fort Worth. Soon thereafter, they became romantically involved. There came a time when she no longer wanted to remain in what she described as a stormy relationship with Taylor. Partially because of this, she moved to a different apartment without telling him. However, he found out where she lived. They were civil but did not reunite. During this time, she did not have a car and relied on Taylor for transportation. She bought a car in July 2009. Aleem described in her testimony how Taylor began stalking her soon thereafter and damaged her car, during a period starting in July 2009 and ending the following month.

The first incident occurred on a July evening. Aleem witnessed, from her bedroom window, Taylor pouring a liquid into her car's gas tank. Aleem testified that Taylor told her that "he really wasn't for sure what he poured in there, but it was a combination of things that he had in his trunk, transmission fluid, oil, [and] sugar." Aleem believed Taylor's motivation in disabling her car was to keep her dependent on him for transportation. She was forced to hire someone to "drop" the car's gas tank and make the car safe to drive again.

On August 23, 2009, she saw, through her bedroom window, Taylor cutting one of her car's tires. She then called the police and pressed charges. This began a three-day period of "torture" (in her words), in which Taylor made repeated "[p]hone calls, visits, bangs on [her] bedroom window, [and] front door."

On August 26, 2009, Aleem saw Taylor deliberately ram his vehicle into hers, damaging her vehicle's rear bumper in the process. Aleem ran out of her apartment when she saw Taylor do this, but she quickly ran back to her apartment when Taylor left his car and began chasing her. She made it inside her apartment but was unable to lock the door before Taylor charged at her, knocked her down, and began choking her. She begged him to stop, but his grip only became stronger. Fortunately, a neighbor walked over to her apartment, and Taylor released his grip on Aleem's throat. Aleem testified that as Taylor walked away, he told her, "Bitch, that's all you worry about is your car."

Later on August 26, Taylor went to Aleem's apartment complex again. She testified that he told her that because "[she] cared about [her] car so much that he was going to go get gas and really put it on fire." Taylor returned to her apartment complex later that day and used his car to block her car in the carport where it was parked. A neighbor, who had parked her car near Aleem's car, asked Taylor whether she could move her car in order to avoid her car catching on fire. Taylor agreed and backed up his car just far enough to allow the neighbor to move her car. At that point, Taylor took a gas can from his car and poured liquid onto the roof of Aleem's car. She begged him to stop, but he refused. The liquid he poured emitted a very strong smell that Aleem recognized as gasoline. She described the amount of gasoline as such a large amount that it dripped down the car and onto the pavement. After Taylor poured gasoline onto Aleem's car, he walked to his own car, retrieved a light blue washcloth, lit

3

the washcloth with a cigarette lighter, and threw the washcloth onto the roof of Aleem's gas-soaked car.

Aleem's neighbor, Travis Knowles, testified that he heard Aleem screaming, "Don't light my car on fire." He then ran inside his apartment, grabbed a baseball bat, ran towards Taylor, and told him not to light Aleem's car on fire. This distracted Taylor long enough to give Aleem an opportunity to remove the smoking washcloth from the top of her car. Knowles testified that gas was "everywhere" and characterized Aleem's car as "soaking wet" from the gasoline. Knowles further testified that he had Occupational Safety and Health Administration (OSHA) training in his work and that because he had smelled gasoline everywhere and because Aleem's car was parked under an awning with people around, a resulting fire could have caused death or serious bodily injury to someone.

After exchanging words with Knowles, Taylor left the apartment complex in his own vehicle. Aleem and Knowles both called 911 and reported the attempted arson to the police. The 911 recordings were played for the jury. Officer Ross Lyons of the Fort Worth Police Department testified that when he arrived at the scene, he smelled a strong odor of gasoline coming from Aleem's car. He also observed that Aleem's car and the ground around it were "wet." Officer Seth Spawn, also of the Fort Worth Police Department, testified that he photographed Aleem's car and the surrounding area. He also confirmed the odor of gasoline. He had no doubt that Aleem's car was soaked in gasoline.

4

Aleem's nine-year-old neighbor, J.G., testified that she saw Taylor parked in the apartment complex parking lot. She watched him pour gasoline from the can onto Aleem's car. She also saw him take a towel or rag out of his car and light it with a cigarette lighter.

There was also evidence that Taylor later admitted to a Fort Worth police detective and a Fort Worth fire investigator that he had led Aleem to believe that he intended to burn her car. He further admitted that he poured liquid from his gas can onto her car and then lit a towel or rag with a cigarette lighter. He first said the liquid was gasoline, then water, and that he poured it on the car to scare her; he later said there might have been a small amount of gasoline in the can before he added the water.

The defense called Lieutenant Steve Larison of the Fort Worth Fire Department to testify. He testified to his opinion that, based on his review of the photographs taken by the police department, the liquid in question "looked like water." He based this opinion on "life experience." He admitted that the photographs were "certainly beyond [his] expertise on identifying what the liquid is." And on cross-examination, he disavowed any "particular training evaluating or examining photos, liquids in photos." He also testified about the scientific aspects of fuel ignition, flammability, and dew points.

Robert Arganbright testified as an expert for the defense over the State's objection. He has bachelor's and master's degrees in physics, is an accident reconstruction expert, and teaches in a community college. He had reviewed the

5

photographs, taken by police at the scene, of the liquid on the top of Aleem's car. He also had photographed an experiment that he had performed using water and gasoline. It was his opinion that water tended to "bead" and that gasoline did not. He concluded that the liquid shown in the police photographs was water, not gasoline, due to the fact that, in his opinion, it appeared to bead.

The State called Stuart Brozgold, a former City of Arlington arson investigator, to evaluate the evidence and the theory of the case presented by the defense. In his opinion, the evidence showed a complete arson. He determined that the facts that the temperature at the time of the incident was around 98 degrees Fahrenheit, the wind was blowing 8–10 mph, the automobile was under a canopy, and gasoline vapors, which are heavier than air, tend to settle downward were all possible reasons why the gasoline on the car did not ignite.

## ATTEMPTED ARSON

In his first point, Taylor claims that the evidence was legally and factually insufficient to support his conviction for attempted arson. As we understand his argument on this point, it is that if the liquid in question was gasoline, it was not capable of being combustible, either due to being diluted or because of wind, the temperature, or other circumstances that existed at the time, or that the liquid in question was water, as he claimed in his statement to the detective and the file investigator. In other words, Taylor argues that his actions did not amount to

6

attempted arson because the liquid was not physically capable of burning Aleem's car.

Taylor also refers to an alleged conflict between Aleem's testimony and Knowles's testimony regarding what happened after Taylor lit the rag. Aleem testified that she immediately grabbed the rag after it was thrown on the car. During Knowles's cross-examination, and after he testified that Taylor lit the rag and that the rag had first flamed and then gone out, defense counsel asked Knowles, "And what did he do with the rag after that?" Knowles answered, "I *think* she grabbed it out of his hand." [Emphasis added.] Taylor thus argues that the rag could not have been an ignition source, as alleged in the indictment.

## LEGAL SUFFICIENCY REVIEW

Factual sufficiency claims are no longer available because the Texas Court of Criminal Appeals has held that the *Jackson v. Virginia* sufficiency standard is the only standard that a reviewing court may apply in determining whether the evidence is sufficient to support each element of a criminal offense. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)); *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Therefore, an appellate court, in its review of the sufficiency of the evidence to support a conviction, must view all of the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 433 U.S. at 319, 99 S. Ct. at 2789;

7

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the testimony. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

## ATTEMPTED ARSON ANALYSIS

In count two of the indictment, the State charged Taylor with the following:

> [Taylor] did then and there intentionally, with the specific intent to commit the offense of arson, do an act, to-wit: while in an incorporated city, pour a combustible or flammable liquid on a motor vehicle and ignite an ignition source, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

This language tracked the language of Texas Penal Code section 28.02 for arson and section 15.01 for criminal attempt. *See* Tex. Penal Code Ann. §§ 15.01, 28.02 (West 2011). "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id*. § 15.01(a).

We note first that Taylor's argument appears to be an "impossibility" defense. He argues that the liquid on top of Aleem's car could not and did not ignite because of the conditions existing at the time or that there was no ignition source if it was grabbed out of his hand. However, Taylor cites no case law in support of his argument.

The impossibility defense, and when it is available, was explained in *Chen v. State*, 42 S.W.3d 926 (Tex. Crim. App. 2001). In *Chen*, the defendant was convicted of attempted sexual performance of a child. The evidence showed that he had arranged on the internet to meet with a willing thirteen-year-old girl for sexual purposes. As it turned out, the thirteen-year-old girl was in fact a police officer who led Chen to believe that he would meet such a girl. Chen was arrested at the agreed rendezvous location. At trial and on appeal, Chen argued that it was physically impossible for him to have committed the offense that he was charged with attempting. *Id.* at 928.

The court surveyed the law on the impossibility defense and its applicability in criminal attempts. *Id.* at 929–30. The court explained that "factual impossibility exists [in criminal attempt] when due to a physical or factual condition unknown to the actor, the attempted crime could not be completed"; it "refers to a situation in which the *actor's objective was forbidden by the criminal law*, although the actor was prevented from reaching that objective due to circumstances unknown to him." *Id.* at 929 (emphasis added; internal quotation marks omitted). The court explained that "[l]egal impossibility [only] exists [when] the act[,] if completed[,] *would not* be a crime, although what the actor [might] intend[] to accomplish would be a crime." *Id.* (emphasis added; internal quotation marks omitted). The court held that factual impossibility was not a defense to the attempted criminal act in that case, and the judgment of the trial court was affirmed. *Id.* at 929, 931.

In the present case, the intended act was arson, a criminal act. Thus, the intervening circumstances—the weather, the wind, the nature of gasoline, and the complainant grabbing the lit rag—could not be considered as a defense to the attempted arson in this case. The attempted arson was completed when Taylor lit the rag after pouring the gasoline onto the car. It mattered not whether he threw the rag on the car.

We have reviewed the evidence adduced at trial in the light most favorable to the verdict, and we conclude that a rational jury could have found beyond a reasonable doubt that Taylor poured a flammable liquid onto the roof of Aleem's car and lit an ignition source with the intention to burn her car.

A review of the record reflects that Taylor told Aleem that he intended to light her car on fire; Aleem saw him pour liquid from a gas can onto her car; Aleem smelled the odor of gasoline coming from the liquid on her car; Taylor lit a washcloth with a cigarette lighter and tossed it onto the roof of Aleem's car; Knowles saw and smelled gas on Aleem's car; Knowles saw Taylor light a washcloth with a cigarette lighter; the police officers who were dispatched to the scene determined that the liquid on and around Aleem's car was gasoline; J.G. saw Taylor pour liquid from a gas can onto Aleem's car; J.G. also saw Taylor ignite a washcloth with his cigarette lighter; Arganbright, a physicist, testified that gasoline is a flammable liquid, and Brozgold, a private fire investigator, testified that a cigarette lighter is an ignition source; Taylor admitted to a detective that he poured some gasoline onto Aleem's car, although he almost immediately said

10

that he poured water, he later admitted that the can could have contained a small amount of gasoline before he filled it with water; and he admitted to a fire investigator that he poured the liquid that was in the gas can onto Aleem's car.

We hold that this evidence is sufficient, under the standard of review set forth above, to sustain Taylor's conviction for attempted arson. We overrule Taylor's first point.

## STALKING

Taylor was also convicted of stalking. Texas Penal Code section 42.072 provides in relevant part:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) the actor knows or reasonably believes the other person will regard as threatening:

. . . .

(C) that an offense will be committed against the other person's property;

(2) causes the other person . . . to be placed in fear . . . that an offense will be committed against the other person's property; and

(3) would cause a reasonable person to fear:

. . . .

(C) that an offense will be committed against the person's property.

11

Tex. Penal Code Ann. § 42.072(a) (West Supp. 2011). Specifically, the indictment alleged that Taylor, on more than one occasion and pursuant to the same scheme or course of conduct directed specifically at Aleem, knowingly engaged in conduct, to wit: poured sugar and oil in the gas tank of a motor vehicle used by Aleem and struck a motor vehicle used by Aleem with a vehicle operated by Taylor, that (1) Taylor knew or reasonably believed Aleem would regard as threatening that offenses would be committed against her property or (2) caused Aleem to be placed in fear that offenses would be committed against her property and (3) would cause a reasonable person to fear that offenses would be committed against her property. The indictment tracked the language of this statute. *See State v. Edmond,* 933 S.W.2d 120, 127 (Tex. Crim. App. 1996) (holding that generally, an indictment that tracks statutory language proscribing certain conduct is sufficient to charge criminal offense).

Taylor claims that the offense of stalking was "simply not supported by any credible testimony or eyewitness corroboration." He claims that the evidence is insufficient because there was no corroboration of the damages to Aleem's car or invoices for work done.

**ANALYSIS**

We do not agree. Reviewing the testimony adduced at trial in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Taylor committed all the elements of stalking.

12

The evidence demonstrated that Taylor was angry with Aleem after she purchased her own vehicle because she no longer depended on him for transportation. Consequently, Taylor directed much of the anger that he felt towards Aleem onto her car. As stated above, Taylor poured sugar and oil into the tank of her car and, on a separate occasion, rammed his own vehicle into her car. Aleem was very frightened of Taylor and repeatedly begged him to leave her and her vehicle alone.

Taylor claims that Aleem's testimony should "have been discarded by the jury as unbelievable." However, the jury is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In this case, the jury resolved any conflicts or inconsistencies in Aleem's testimony in favor of Aleem and the State's case. We overrule Taylor's second point.

## INEFFECTIVE COUNSEL

In his third point, Taylor argues that he received ineffective assistance of counsel at trial. He complains *inter alia* that his trial counsel was inadequately prepared for an arson case and called a witness who was of "dubious background and qualifications" to testify as an expert for the defense. The State argues that Taylor did not show that he was denied effective assistance of counsel by a preponderance of the evidence.

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the

13

standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). There is a strong presumption that counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas*, 163 S.W.3d at 740. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*, 104 S. Ct. at 2068.

14

Taylor contends that his trial counsel was ineffective because he was unprepared to try an arson case and because he hired an expert of "dubious background and qualifications" to testify.

Taylor filed a motion for new trial and requested a hearing thereon, which the trial court granted. During the hearing, Taylor called his trial counsel, Keith McKay, to testify. McKay testified that he had been a practicing attorney since 1985. McKay testified that in preparation for the trial, he read the State's file and reviewed the State's evidence against Taylor. He also read all of the witness statements and hired a private investigator to investigate the case. Further, McKay reviewed the statutes dealing with arson and stalking and compared the indictment to the requirements of the statutes. Additionally, McKay hired an expert to bolster the arson defense theory that Taylor put forth before McKay was hired to defend him.

As support for his claim that McKay was unprepared to try his case, Taylor points to the fact that McKay's first motion for continuance was not verified. However, McKay's mistake was a simple clerical error, and he filed a corrected motion a few days later, which was granted by the trial court. The minor clerical error contained in the first motion for continuance had no bearing on the result of Taylor's trial.

As further evidence of McKay's alleged incompetence, Taylor points to the fact that McKay introduced evidence that Aleem visited Taylor in jail after the

15

arson and stalking incidents. However, as McKay stated during his testimony, that decision was based on trial strategy. McKay testified:

> I think it was a tradeoff. She testified as to what a nightmare it was and how she essentially had been tortured by [Taylor], but, yet, she would go see him at jail—in the jail, and there was some testimony of some other times that she saw him when he was out on bond. So I think that was a fair tradeoff. You don't want the jury to know your client's in jail, but with her testimony, I felt it was good for the jury to know she was going to see him. How could she be so terrified if she would go talk to him in and out of jail?

McKay explained that his trial strategy was to make Aleem appear to lack credibility.

As further support for his argument that McKay was unprepared for trial, Taylor points out that McKay was not familiar with the National Fire Protection Association Manual Series Number 921 (the NFPA 921). However, during the defense's case in chief, McKay called an expert witness, Lieutenant Larrison, who was quite familiar with the NFPA 921 manual and who testified about the manual's role in the practice of arson investigation.

Taylor asserts that the second expert McKay called on his behalf, Arganbright, the physics professor, jeopardized Taylor's defense because Arganbright was not qualified to testify as an expert in an attempted arson trial.

McKay testified that before he began representing Taylor, Taylor had given interviews to both a Fort Worth police detective and a Fort Worth fire department investigator. In both of those interviews, Taylor admitted pouring a liquid onto Aleem's car and lighting a blue towel or rag on fire. However, in both interviews,

16

Taylor essentially maintained that the liquid he poured onto Aleem's car was water, not gasoline. Therefore, McKay's defense theory was limited to asserting that the liquid poured onto the vehicle was actually water and not gasoline. He had called Arganbright for the limited purpose of reviewing photographs taken at the scene and establishing that the liquid on Aleem's car exhibited the properties of water rather than gasoline. The record supports that Arganbright examined the photographs taken by police and opined that the liquid in question was water, not gasoline.

Taylor points to Arganbright's lack of expertise in the area of arson investigation as evidence of McKay's ineffectiveness. However, as pointed out above, the issue in this case was whether the liquid poured onto Aleem's car was gasoline or water. The issue in this case was not where and how a particular fire started. Those are determinations that an arson investigator would make. Arganbright, a physics professor with both a master's degree and bachelor's degree in physics, was qualified to testify to the visual characteristics of water contrasted with those of gasoline.

It appears that McKay pursued other experts to testify and support Taylor's statements to the Fort Worth detective and fire investigator that the liquid he poured onto Aleem's car was water, not gasoline. McKay contacted Max Courtney's office, the Integrated Forensic Labs, and certified arson investigator Kelly Johnson in regard to testifying to the characteristics of water and gasoline. However, none of the other three experts that McKay contacted, in his view,

17

could assist the defense in establishing that the liquid Taylor poured onto Aleem's car was water and not gasoline.

The trial record and the record from the hearing on Taylor's motion for new trial reflect that McKay's actions were motivated by trial strategy to show that Aleem was not a credible witness and that the liquid poured onto Aleem's car was water and thus not a flammable or combustible substance. It appears that McKay diligently prepared for trial and called not only one but two expert witnesses to support the defensive theories. McKay's performance during the trial was more than sufficient, and this is demonstrated by the fact that the jury deliberated during the guilt-innocence phase for approximately nine hours before deciding Taylor's guilt. The record in this case does not demonstrate that McKay rendered ineffective assistance.

Further, Taylor does not show that, had McKay prepared for trial differently or had McKay obtained a different expert to testify, Taylor would have been found not guilty. Taylor cannot show by a preponderance of the evidence that McKay's representation fell below prevailing professional norms and that there is a reasonable probability that, but for McKay's deficiency, the result of the trial would have been different.

We determine that Taylor did not meet his burden of proving his claim of ineffective assistance of trial counsel and overrule Taylor's third point.

18

## CONCLUSION

Having overruled all of Taylor's points, we affirm the trial court's judgment.


PER CURIAM

PANEL:  CHARLES R. HOLCOMB (Senior Judge, Retired, Sitting By Assignment); LIVINGSTON, C.J.; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  September 15, 2011